[No. 303.   Decided December 9, 1891.]

JAMES DIGNAN, *Respondent*, v. JAMES SPURR, *Appellant*.

CONTRACT—RESCISION—INSTRUCTIONS—SALE—WAIVER—DAMAGES.

Where an issue is raised by the pleadings upon the rescision of a contract, and the evidence concerning the rescision is conflicting, it is error for the court to refuse to instruct the jury, that if they believe from the evidence that such an agreement for the rescision of the contract set out in the plaintiff's complaint was made as is alleged in defendant's answer, then the parties would be bound by such an agreement, and the jury must find for defendant.

Where an affirmative defense is pleaded in defendant's answer, it is error for the court to instruct the jury that "if you believe from the evidence that all the material allegations of the plaintiff's complaint have been proven by a preponderance of the evidence, then you will find for the plaintiff."

Where the contract of sale is to deliver goods at a certain date, the purchaser does not, by accepting a delivery after such date, waive any claim he may have for damages arising from the delay.

*Appeal from Superior Court, King County.*

The facts are stated in the opinion.

*Preston, Carr & Preston*, for appellant.

*John H. Elder*, and *John K. Brown*, for respondent.

The opinion of the court was delivered by

ANDERS, C. J.—The respondent brought this action against appellant to recover damages for an alleged breach of a contract in writing, which is as follows:

"This agreement, made and entered into this 19th day of November, A. D. 1889, by and between James Dignan, of the city of Seattle, King county, State of Washington, party of the first part, and James Spurr, of the same place, the party of the second part:

"Witnesseth, That for and in consideration of the covenants and agreements on the part of said party of the

second part hereinafter set forth and contained, the said party of the first part agrees to manufacture at his brick yard in West Seattle, in said King county, five hundred thousand (500,000) good merchantable brick, the same to be sold and delivered to the said party of the second part, at the place and for the price hereinafter mentioned.

"Said first party is to commence delivering bricks from the second kiln which he shall burn at his said brick yard, and shall continue to deliver all the brick he shall manufacture from said time until the full amount is delivered.

"Said brick are to be delivered on a scow on such gridirons on the different slips in the city of Seattle water front as shall be most convenient for said second party.

"In consideration of the above, the said party of the second part agrees to buy, purchase and to take from said first party all of said five hundred thousand (500,000) brick upon said terms and conditions above named, and agrees to pay to said party of the first part thirteen dollars ($13) per thousand for all bricks to the amount aforesaid delivered on the gridirons as aforesaid, the said money to be paid when the said second party has promptly taken the brick from the said gridirons, and has delivered them at the buildings in the city of Seattle, where the same are to be used, it being hereby understood and agreed that the said second party is to take them promptly from the said gridirons and is to deliver them promptly at the said buildings aforementioned. In witness whereof," etc., etc.

The plaintiff alleges in his complaint that he kept and performed all the terms and conditions of the contract on his part, and that between the 11th day of January and the 7th day of May, 1890, he manufactured five hundred thousand good merchantable brick, and as fast as they were manufactured delivered them on gridirons on the water front of the said city of Seattle, at the place designated by defendant as most convenient for him; that the defendant accepted and received two hundred and sixty-seven thousand three hundred and two bricks of the quantity so delivered to him by plaintiff, but wholly failed and refused to accept or receive the remainder thereof, and that

by reason of such failure and refusal to accept and receive
the same the plaintiff was compelled to and did sell the
same in such quantities as he could for the best price that
the same would bring, of which the defendant had notice;
and that by reason of the failure and refusal of defendant
to perform his said contract, the plaintiff has sustained
damage in the sum of $795.82. The answer of the de-
fendant in substance denies that the plaintiff performed
the conditions of the contract on his part; admits that the
defendant received and accepted 266,792 brick from the
plaintiff; alleges that on or about April 4, 1890, plaintiff
and defendant mutually agreed that said contract should
be determined and canceled, and accordingly settled and
determined the same, and mutually agreed that the settle-
ment then and there had should be considered as a satis-
faction in full to both the plaintiff and defendant of all
demands and obligations, and of all duties arising under or
flowing from the said contract in any manner whatsoever;
and sets forth a counter claim for an alleged failure to de-
liver the brick at the time agreed upon by and between
the plaintiff and defendant. Upon the issues raised by the
pleadings a trial by a jury was had, resulting in a verdict
and judgment for the plaintiff. The defendant appeals.

At the trial the defendant requested the court to instruct
the jury to the effect that the parties to a written contract,
such as the one sued upon in this case, could, after the
same had been partially performed, mutually agree that
the same should be canceled and at an end, and that each
party should be released from all obligations thereunder.
That such an agreement for the annulment and rescission
of such a contract need not be in writing. That if the jury
believe from the evidence that such an agreement for the
annulment or rescission of the contract set out in the plain-
tiff's complaint was made, as the defendant in his answer
alleges was made, then the parties would be bound by such

an agreement, and the jury must find for the defendant.
That if the jury believe from the evidence that the plaintiff
and defendant, as alleged in the affirmative defense pleaded
in the defendant's answer, orally agreed between themselves
that the contract set out in the plaintiff's complaint should
be and was at an end, and that both of the parties thereto
should be and were released from all the obligations there-
under, then the jury should find for the defendant.    The
court refused to so instruct the jury, and failed to give any
instructions whatever upon the question of rescission of the
contract.    In so ruling appellant claims the court erred.
And in order to determine the question thus presented it
becomes necessary to revert to the testimony.

It appears from the statement of facts in the record that
the respondent commenced to deliver the brick to appel-
lant on January 11, 1890, and that from that time up to
March 28th appellant accepted and received all that were
offered, but that he then notified respondent that he would
receive no more, for the reason, as he says, that they were
not being delivered according to agreement.    On April 4,
1890, the parties had a settlement of their accounts, and
appellant gave respondent his check for $650, which he
claims were in full payment of all demands up to that date,
and which was so stated in the check.    Respondent admits
the settlement, and also admits that he received the check,
but says there was a balance still due him of $6.50, on ac-
count.    Appellant asserts that at the time he made this pay-
ment the contract sued on was rescinded and abandoned
by mutual consent.    He specifically testified, in substance,
that when he paid the $650 he expected it was accepted in
full payment for all brick he had received, and that he was
not going to have any more trouble about it; that when he
told respondent he was not going to receive any more brick
the latter did not object to it, but responded that if he, ap-
pellant, had anything he would take it out of him, but as

he had not he would let him go; that he said he did not
care whether any more brick were taken by appellant or
not, but if he had anything he would take it out of him.
He further testified that after the time of the payment by
him of the $650, respondent did not deliver or tender to
him any more brick, and did not demand any payment
for brick delivered or tendered until August 1, 1890,
which was just prior to the commencement of this action.

On the other hand, the respondent testified that he
never at any time agreed or consented to rescind the con-
tract, but on the contrary, in compliance with its terms,
continued to tender brick to appellant as fast as manufac-
tured, up to May 7th, at which time he completed the
delivery of the entire quantity specified in the contract,
and that he notified appellant when each lot was deliv-
ered, and upon his refusal to accept, sold them in the
market for the highest price he could obtain, and cred-
ited appellant with the net proceeds.

There is little, if any, disagreement between counsel for
the respective parties as to the law applicable to this case.
It seems to be conceded that such contracts as the one
now under consideration may be rescinded by mutual
parol consent of the parties concerned; but counsel for
respondent insist that no such mutual consent is shown
in this instance, and that the court therefore rightfully
refused to instruct the jury as requested by appellant.
They argue that there was no evidence upon the question
of the rescision of the contract, and that the court prop-
erly so found, and cite authorities to show that it is error
for the court to instruct the jury upon questions upon
which there is no evidence.

We have no doubt of the soundness of the doctrine
enunciated in the cases referred to, but we fail to find it
announced in any of the cases that, where there is a con-
flict of testimony upon an issue raised by the pleadings,

it is proper for the court to refuse to instruct the jury upon the point in controversy. The question upon which the refused instruction was requested was a controlling one in the trial of this case, and whether the contract was abandoned or not is a fact that may be inferred from the acts and declarations of the parties to it. These acts and declarations were in evidence, and we are clearly of the opinion that the instruction requested by counsel for appellant was relevant to the issue, and pertinent to the evidence, and should have been submitted to the jury.

Appellant also contends that the court erred in instructing the jury as follows:

"If you believe from the evidence that all the material allegations of the plaintiff's complaint have been proven by a preponderance of the evidence, then you will find for the plaintiff."

This instruction, standing alone, was, under the circumstances, misleading, as it virtually informed the jury that there were no facts in the case to be determined, other than those alleged in the complaint. The jury might have believed that all the material allegations of the complaint had been proved by a preponderance of the evidence, yet, if they also believed that the contract had been rescinded, as alleged in the answer, they should not have been told to find for the plaintiff generally.

The court also gave the following instruction to the jury:

"You are instructed that either party to a contract may waive any of the provisions in his favor. If you find from the evidence that under this agreement between the plaintiff and defendant that the plaintiff was to commence delivering brick by December 15, 1889, and to deliver the same from time to time on, according to defendant's needs, and if you find that defendant continued to wait for any length of time after said December 15, 1889, to receive brick from plaintiff, then the defendant has waived his right to have the defendant deliver brick according to his needs dur-

ing all the time he has accepted the brick from the plaintiff, and cannot recover any damages for any failure of the plaintiff to deliver the brick to the defendant according to his needs during that time."

Counsel contend that appellant waived no right to damages arising out of any delay in delivering the brick by respondent, notwithstanding they were accepted at a later date than that fixed for their delivery by the agreement between the parties, and we are inclined to the opinion that the objection is well founded. The law on this subject is tersely stated by Lord BLACKBURN, as follows:

"When the contract was to deliver goods at a certain date, and that date is passed, the vendee may accept the goods and bring his action for any damages he may have actually suffered in consequence of the late delivery. He does not, by accepting a late delivery, waive any claim he may have for damages arising from the delay. Just as where by accepting goods which were not up to the warranted quality, he does not waive his right to damages for breach of warranty." Blackburn on Contract of Sale, p. 524.

The objection to the admission of the testimony of the witnesses McCoombs and Heath, on the ground of irrelevancy, is more technical than substantial, and was not urged upon the argument and we will not now stop to discuss it.

For the foregoing reasons, the judgment of the court below is reversed and the cause remanded for a new trial.

HOYT, SCOTT, STILES and DUNBAR, JJ., concur.