[No. 3850.   Decided July 11, 1901.]

WIRT W. SAUNDERS, *Respondent,* v. UNITED STATES MAR-
BLE COMPANY, *Appellant.*

PLEADING — DUPLICITY — ELECTION OF REMEDIES — ACTION AGAINST
CORPORATION.

Where a plaintiff brings suit upon an express contract alleged to have been made with him by a corporation, the fact that he also alleges, by way of ratification and estoppel, the acts of the corporation in accepting and retaining the benefits flowing from such contract would not render his complaint faulty on the ground of duplicity, and subject to a motion for an election of remedies, when there are no specific allegations concerning rati-

fication, acquiescence, or estoppel, and nothing in the complaint to indicate that plaintiff was seeking to recover on those grounds.

CORPORATIONS — ACTIONS FOR BREACH OF CONTRACT — AUTHORITY OF OFFICER — NON-SUIT.

One seeking to enforce the liability of a corporation on a contract alleged to have been made by it should not be non-suited for failure to show that the contract was authorized by the corporation, when the evidence shows that it was entered into on behalf of the corporation by its secretary and treasurer, who also at the time occupied the position of general and financial manager of the company, and was entrusted by the board of trustees with the general management of its affairs, since the relations of such officer to the corporation and its course of dealing through him raised a question for the jury to determine whether he was authorized to make the contract in controversy.

SAME — FAILURE TO DELIVER STOCK — MEASURE OF DAMAGES.

In an action for damages for breach of contract to deliver shares of stock, a verdict based on evidence showing the actual selling price of the stock about the time of plaintiff's demand for its delivery could not be deemed as awarding excessive damages.

Appeal from Superior Court, Spokane County.—Hon. LEANDER H. PRATHER, Judge. Affirmed.

*John C. Kleber,* for appellant.

*Robertson & Miller,* for respondent.

The opinion of the court was delivered by

HADLEY, J.—The material averments of the complaint in this cause are that on or about the 29th day of December, 1897, the respondent, Saunders, entered into a contract with the appellant, the United States Marble Company, a corporation, whereby respondent agreed to procure and to aid in procuring a loan of money to be made to said corporation by some third party, for the use and benefit of appellant, to the amount of $850; that respondent indorsed a note made by E. C. Nordyke for and on behalf of appellant, and signed by Nordyke as secretary and

treasurer of appellant corporation, as the act of said corporation, for the sum of $500, payable to the Fidelity National Bank, and upon the credit and indorsement of respondent said sum was procured from said bank; that thereafter respondent procured one D. W. Henley to indorse another note made by the said Nordyke to said bank, upon which said note the further sum of $350 was advanced to appellant, the respondent agreeing to indemnify said Henley for the said indorsement; that respondent procured the said sum of $850 for the use and benefit of appellant, and appellant accepted the money so procured and advanced upon the following terms of agreement, to-wit: In consideration of respondent's indorsing and procuring the indorsement of said notes and furnishing said sum of money, the appellant agreed to re-pay the said sum so procured, and, as further consideration for said services on the part of respondent, did sell and agree to deliver to respondent, and cause the proper transfer thereof to be made and entered upon the corporate books of appellant, twenty-five thousand shares of the capital stock of said company, of the par value of $1 per share, said stock to be delivered to respondent forthwith upon respondent's agreement to procure and to aid in procuring said loan of money to appellant, as aforesaid; that respondent performed all the services required by him to be performed under said agreement, and thereby became entitled to the delivery and transfer of said twenty-five thousand shares of stock; that, notwithstanding respondent has often demanded the transfer and delivery of such stock, yet appellant has wrongfully failed and refused to so deliver and transfer the same, save and except fifteen thousand shares which appellant, under and in accordance with its said agreement, and in part performance thereof, delivered and transferred to respondent; that respondent has frequently demanded the

transfer and delivery of the remaining ten thousand shares of said stock, but appellant has continued to refuse, and still does refuse, to complete the performance of its said agreement. It is averred that there was no market value for said stock at the time said agreement was made, but that the same is now of the value of $1 per share, and that said ten thousand shares are now of the value of $10,000; that by reason of appellant's failure and refusal to transfer and deliver said ten thousand shares of its capital stock, and by reason of withholding said stock from respondent, he has been damaged in the sum of $10,000; and he prays judgment for that amount. The answer denies the material allegations of the complaint, and alleges affirmatively that, if said Nordyke ever made the contract set forth in the complaint, he had no power or authority as such officer or otherwise to make such contract, and that no such contract was ever authorized to be made by the appellant corporation, or was ever made with its knowledge or consent or with its acquiescence; that the secretary and treasurer of said corporation, or either of them separately, under its articles of incorporation and by-laws, or otherwise, have no power or authority, without the special resolution of its board of trustees to that effect, to make any such contract as is mentioned and described in the complaint, and that no such resolution was ever passed by the trustees whereby said Nordyke, as such officer or officers, was ever authorized to make said contract set out in the complaint or otherwise; that appellant never received any benefits of any kind from any such contract as is mentioned in the complaint. The reply denies the affirmative allegations of the answer. A trial was had before a jury, and a verdict was returned in favor of the respondent for the sum of $5,000. Thereupon the appellant moved for a new trial, which was by the court denied, and judgment

was entered in favor of respondent for $5,000 and costs.
From said judgment the company has appealed.

There are many distinct assignments of error, forty-
seven in all, but counsel for appellant have, for conven-
ience, divided them into three groups: (1) Errors of the
court in denying the various motions touching the plead-
ings, for an election, non-suit, judgment, and new trial;
(2) errors in the admission and rejection of evidence; (3)
errors in giving instructions, and in refusing to give and
modifying proposed instructions. Referring to the errors
assigned as to the various motions touching the pleadings,
we find that the matters mentioned in assignments num-
bered 2 and 3 cannot be urged as errors, for the reason
that an order of the court found in this record granted ap-
pellant the relief asked. The court granted those portions
of appellant's motion to strike from the amended complaint
upon which error is asserted under the two assignments
above mentioned. We do not think the other errors as-
signed as growing out of the motions directed to the plead-
ings can be said to be more than harmless error. They are
not such as affect any substantial right of appellant, and
such errors will not authorize the reversal of a judgment.
It is next urged as error that the court denied appellant's
motion to require respondent to elect upon what cause of
action he desired to stand, viz., upon the express contract
alleged, or upon the cause of action against the company
by estoppel or acquiescence. We have examined the com-
plaint with much care, and we are unable to discover that
more than one cause of action is stated therein. The com-
plaint seems to clearly state a cause of action upon an ex-
press agreement, as has already been set forth in the state-
ment of the case in this opinion. It is simply stated inci-
dentally that "defendants accepted said sum of money so
procured and advanced upon the following distinct terms

and agreement." The agreement itself is clearly set forth as an express agreement, and in alleging that respondent complied fully with his part of the contract, he shows that he was instrumental in procuring the money and in bringing about its delivery to appellant, and the words above mentioned are the equivalent of an averment that appellant accepted the money in pursuance of the terms of the express contract. It is further averred that plaintiff procured the said money "to and for the use and benefit of defendant corporation, and said loan of said amount of money was made and received by said defendant and applied to its use and benefit; and this plaintiff did in all things and respects fully comply with his said contract with defendant, and duly rendered and performed the services undertaken and agreed by him in said contract to be rendered and performed." Thus, while it is averred that the appellant applied the money to its use and benefit, it is only a link in the chain of averment by which respondent seeks to show that he has fully complied with his express contract. Perhaps the allegation that the money was applied to the use and benefit of appellant was not necessary to the issue, but there are no specific allegations concerning ratification, acquiescence, or estoppel, and it seems manifest to us that respondent by his complaint was not seeking to recover by way of estoppel of the appellant upon the ground of retention of benefits or subsequent ratification, but solely by reason of his alleged express contract. Since, however, the express contract is made the basis of the action, we see no reason why the subsequent acts of appellant alleged to have been done in pursuance and by reason of such contract were not proper matters for averment, and for the consideration of the jury, as bearing upon the fact of the existence or non-existence

of such contract. We think the motion to require respondent to elect was properly denied under the complaint.

It is next urged as error that the court denied the appellant's motion for non-suit at the close of respondent's case. It is insisted that no authority had been shown for Nordyke to enter into the contract set forth in the complaint, and in support of which evidence had been introduced by respondent. Nordyke testified in behalf of respondent that he entered into the contract for the company, and that he was not only secretary and treasurer at the time, but was general and financial manager of the company. Edwards, who was president of the company at the time the contract was made, testified as follows:

"Question: Did you ever have any conversation with E. C. Nordyke relative to the same? If so, state what it was, where, and what official position you held at the said time.

Answer: I did; in the latter part of December or fore part of January, after the organization, when I was president of the company and he was secretary and treasurer and general manager. The conversation was to the effect that there was a large number of labor liens about to be placed upon the property and that it was a critical time in the financial affairs of the company. Money must be raised at once. That was the reason that he gave; and for that reason I sanctioned as president of the company his action as general manager.

Q. If you were the chief executive officer, how did it happen that Nordyke took this into his own hands?

A. I was about two thousand miles away from the corporation when he took this action as general manager.

Q. When was the office of general manager created?

A. There was no formal entry of the time and fact. It was at the first meeting of the board of trustees.

Q. I have simply asked you when, if there was one created?

A. I think the first of November, 1897.

31—25 WASH.

Q.  Was it created by resolution or the by-laws of the company or its trustees?

A.  It was created by general consent of the trustees at the first meeting, that Mr. Nordyke should go ahead and be general manager of the business affairs of the company there.

Q.  What was the business affairs of the company?

A.  To complete and construct a road to reach the quarries of the United States Marble Company, on which we expended about $5,000, and to open the quarry, and get out material, and to create a market for the material.

Q.  So your company had a chief executive and a general manager, did it?

A.  Yes, sir; at that time; by consent.

Q.  Did the general manager also have the authority to make contracts, issue stock, raise money, and do all the other acts and things the chief executive had the authority to do?

A.  No; I will state it in this way—I will make it plain, Mr. Hudson; I don't want to annoy you by trying to evade this question.  I stated that we had no by-laws at the meeting of the board of trustees.  Formal business was done—in other words, by mutual consent of all the trustees, Mr. Nordyke was selected to take hold, take charge of the business there, which he did in the shape to have the general management of the affairs there; consult with Mr. Kinan and take charge of the meetings of the board—who were there, etc.; that is about what comes into the duties of a general manager.  There were no by-laws at that time by which a general manager's duties were prescribed.

Q.  Then you probably delegated your authority as president to Mr. Nordyke?  That is a fact of the signing, is it not?

A.  I don't wish to be understood that way; there was the vice-president there, but at the meetings of the board there would have to be an executive continuously in my absence.

Q.  Were you present all the time?

A.  After the first meeting, yes, sir.

Q.  Did Mr. Nordyke consult with Mr. Kinan on be-
half of the corporation, as you have suggested he should
have done in regard to this matter of the Saunders' stock?
Did he consult with the board?

A.  He consulted with them in regard to ways and
means, but as to raising money, I could not say.

Q.  At that meeting of the board, when this general
assent was given, it was under the proviso that he should
consult with Mr. Kinan and the board, was it not? As you
have just stated?

A.  Each of the trustees requested that as I was going
away, and had taken charge of matters up to that time, as
I had to come to Chicago to raise funds to build the road
and to carry on the general business of the company, the
general business of the company there was to be in the
hands of Mr. Nordyke, who was to be general manager."

In view of the above testimony concerning Nordyke as
general manager, we think the rule announced by this court
in *Carrigan v. Port Crescent Imp. Co.,* 6 Wash. 590 (34
Pac. 148), is applicable here. The court in that case, at
p. 591, says:

"When a corporation names some person as its manager,
and as such allows him in a large measure to control all its
business transactions, it must be held responsible for the
acts of such manager in the name of the company until it
has been affirmatively shown by it that as a matter of fact
such acts were unauthorized. This is, perhaps, an exten-
sion of the general rule, but, in our opinion, such exten-
sion is necessary to prevent great hardships being cast upon
those who deal with corporations. The very use of the
word 'manager' as applied to the officer conveys the idea
to the ordinary mind that to one thus named has been com-
mitted the management of the affairs of the company.
And to hold that one dealing with a person so held out
must, before the company can be held liable for his acts,
show affirmatively that it had authorized them, would often
result in great hardship. The books of many of the smaller
corporations are very imperfectly kept, and from them it
is sometimes impossible to determine as to just what au-
thority is vested in the manager, and to require of one who

deals with the corporation to show affirmatively the authority thus given would often require of him something that it was next to impossible for him to ascertain. But if we hold that the acts of the person thus held out as man--ager are *prima facie* those of the company, but that such presumption can be rebutted by affirmative proof on its part that in fact they were unauthorized, it will greatly subserve the public interest and convenience, and at the same time impose no hardship upon the corporation."

A corporation will be prevented from repudiating the acts of its officers within the general scope of their powers, in the absence of fraud on the part of the person seeking to charge the corporation, or of collusion between him or his privies and the officers of the corporation making the contract. 4 Thompson, Law of Corporations, § 5251.

The management of the entire business of a corporation may be entrusted to its .president, either by an express resolution of the directors, or by their acquiescence in a course of dealing. *Jones v. Williams,* 139 Mo. 1 (37 L. R. A. 682, 61 Am. St. Rep. 436, 39 S. W. 486).

If this power of general management may be delegated to the president of a corporation, there is no reason in principle why it may not be delegated to another, as it is claimed was done in this case. Nordyke was not only a director of the appellant company, but was its secretary and treasurer, and the president of the company testified that he was its general manager by general consent of the trustees. We think the testimony in this connection was such as, when taken together with other testimony concerning the course of dealing with this corporation and its relations with Nordyke, made it the duty of the court to submit the question to the jury whether Nordyke was authorized to make the contract under consideration. The motion for non-suit was therefore properly denied.

It is also assigned as error that the court denied appel-

lant's motion for an instructed verdict in its favor at the close of the evidence in the case. For the reasons heretofore stated in discussing the motion for non-suit, we think this motion was also properly denied. After the case had passed the motion for non-suit, it became the particular province of the jury to determine the facts under proper instructions by the court, unless subsequent evidence introduced by respondent clearly destroyed the force of his former testimony. Such is not the case in this record.

It is contended that the court erred in denying the motion for new trial, because of errors heretofore discussed, and also because of excessive damages. Referring to the matter of excessive damages, we think the evidence in the record to the effect that stock sold at fifty cents per share near the time the demand for the stock was made at a meeting of the trustees is sufficient upon which to found the amount of the verdict. If respondent was entitled to receive the stock at all, he was entitled to recover by reason of its being withheld from him the amount which he might have realized from it in the market had it been under his control, and such amount is properly determined by evidence as to stock sales actually made.

Numerous errors are assigned upon the rulings of the court during the introduction of the testimony. A reading of the record, however, satisfies us that, upon the whole, no substantial rights of the appellant were prejudiced thereby. To enter into a discussion of the points raised by these various assignments would require much space, and, viewing them as we do, we do not deem such extended discussion necessary.

A number of errors are also assigned upon the instructions given by the court, and also upon the refusal to give, and modification of, proposed instructions. We believe, however, that the instructions clearly and fully stated the ·

law applicable to the case, and that no reversible error was committed in relation thereto.

The judgment is affirmed.

REAVIS, C. J., and ANDERS, FULLERTON, DUNBAR and WHITE, JJ., concur.