[No. 23539. Department One. May 4, 1932.]

GRACE MORRIS, *Respondent,* v. CHARLES R. BLYTH *et al.,*
*Appellants.*[1]

*Lund & Dodds,* for appellants.
*M. E. Mack,* for respondent.

PARKER, J.—The plaintiff, Miss Morris, as assignee of Abrahiem A. Haddad, commenced this action in the superior court for Spokane county, seeking recovery from the defendant co-partners, stockbrokers, of the sum of $6,275, paid by him to them as the full purchase price of one hundred shares of Cities Service Company common stock, and the sum of $22.50 paid by him to them as their brokerage fee for procuring the stock for him. A trial upon the merits in the superior court for that county, sitting with a jury, resulted in verdict and judgment awarding to the plaintiff recovery as prayed for, from which the defendants have appealed to this court.

The contentions here made in behalf of appellants are directed wholly to their counsel's claims of error in the trial court's denial of their challenges to the suf-

[1]Reported in 10 P. (2d) 982.

ficiency of the evidence to sustain any recovery by the plaintiff, made by motion for dismissal at the close of the plaintiff's evidence, and made by motion for judgment notwithstanding the verdict before the rendering of the judgment.

The evidence is not free from conflict. However, we think the controlling, outstanding facts, as the jurors were warranted in viewing them from the evidence, may be sufficiently summarized as follows:

Appellants were at all times in question stockbrokers maintaining offices in Spokane and in other cities in this country. On October 10, 1929, Haddad gave to appellants at their Spokane office an order for their purchase for him of one hundred shares of Cities Service Company common stock, at that time paying to them $6,275, the full purchase price thereof; and also then paying to them the sum of $22.50 as their brokerage fee for their procuring the stock for him. At the time of so placing this order and making these payments, it was expressly agreed between them that the certificate evidencing the stock to be delivered to him was to be issued in Haddad's name. This was shown by his own testimony, and also by endorsement upon the memorandum of the transaction then made and given by the appellants to him, in these words: "Certificate to be issued in the name of Mr. Abrahiem A. Haddad."

With reference to the agreement between them as to the time of the delivery of the stock to Haddad, he testified to a conversation had between him and the agent of appellants representing them in the transaction at that time, in part, as follows:

"I said 'Where is the stock? Can I get it now?' He said, 'No, I will wire and get it for you tonight.' 'The most it will take is ten days.' He said he was going to wire to Kansas City."

It is conceded that that was the place where the transfer of the stock would have to be made upon the books of the company and a re-issuing of it to Haddad in his name. This conversation was manifestly a part of the transaction, evidencing a condition of their agreement then made.

The stock was not ordered by the Spokane office until several days after October 10th. It was then evidently ordered from appellants' Seattle office, to be sent to Spokane. Nothing was ever done by appellants looking to the transfer of the stock into Haddad's name upon the books of the corporation and the issuing of a certificate therefor in his name. Haddad further testified:

"About the 21st of October, I called up and asked him [appellants' agent] if my certificate came in, and he said 'No, it didn't show up yet. It will show up most any time.' I called him up the second day and asked him if it had come in and he said 'No.' I kept calling him up for a few days, and he said 'I don't know why the certificate don't come in.' He said, 'It will show up any time.' But it didn't show up. I met Mr. Hemphill [appellants' agent] on November 2nd. He said, 'Your certificate just came in this morning. They came in street name.' I said, 'You know I didn't order my certificate in street name and furthermore, it is too late—I wouldn't have it.' He said, 'Well, it is here, you can take it if you want to, suit yourself.' I said, 'No, I don't want it.' "

It is conceded that the words "street name" meant a stock certificate endorsed in blank so that the stock could be transferred to another by a mere delivery of the certificate; but such a transfer would not constitute an issuance of the certificate in Haddad's name, nor make him the record owner of the stock upon the books of the corporation, which was an express condition of his contract with appellants. They did not at

any time produce or offer to deliver to Haddad the stock, evidenced by certificate issued in his name, as was expressly agreed to in their contract with him. This was the condition of the relationship of the parties when this action was commenced on January 2, 1930, by Miss Morris, Haddad having prior thereto assigned his claim against appellants to her.

These facts, as we think the evidence well warranted the jury in believing them, it seems to us, argue all but conclusively that it should not be decided, as a matter of law, that the evidence fails to support the verdict and judgment.

Counsel for appellants particularly stress their argument that the tender by them to Haddad of the stock in such certificate form that it could be transferred by mere delivery of such certificate was a compliance with their obligation under their contract with him. The trouble with this argument is that, as the evidence abundantly warranted the jury in believing, such was not the contract between them. It may or may not have been of particular advantage to Haddad to have the certificate evidence his record ownership of the stock upon the books of the company; but he was the sole judge of that matter. It is enough that the jury believed that to be a condition of his contract with appellants, and that it was not timely fulfilled on the part of appellants.

The judgment is affirmed.

TOLMAN, C. J., MITCHELL, BEALS, and BEELER, JJ., concur.