[No. 24147. *En Banc.* July 3, 1933.]

Louis Allen, *Respondent,* v. Charles R. Blyth *et al., Appellants.*[1]

[1]Reported in 23 P. (2d) 567.

*Lund & Dodds,* for appellants.

*M. E. Mack* and *George W. Young,* for respondent.

MAIN, J.—The plaintiff, as assignee of John Saad, who is the real party in interest, brought this action to recover damages by reason of delay in the delivery of corporate stock which Saad had purchased through or from the defendants. The cause was tried to the court and a jury, and resulted in a verdict in favor of the plaintiff in the sum of $3,600. The defendants moved for judgment notwithstanding the verdict and, in the alternative, for a new trial; both of which motions being overruled, they appeal from the judgment entered upon the verdict.

The facts are these: The appellants are copartners doing business under the firm name of Blyth & Company, and maintained one of their offices in the city of Spokane, where they sold stocks and bonds. John Saad was a resident of the same city. October 10, 1929, Saad placed an order with the Spokane office for one hundred shares of Cities Service Company common stock, and at the time paid therefor the sum of $6,275 and a brokerage fee of $22.50. The stock was to be delivered within ten days, and, as Saad testified, the certificate therefor was to be made out in his own name.

On or about November 2, 1929, Saad was informed that the stock had been received at the office of the appellants and that it was in what is called "street form," which means that the party in whose name it had been issued had made an assignment thereof in blank, and title thereto would pass by delivery. Saad objected to receiving the stock because it was in "street form," and it was returned to the San Francisco office and a certificate issued in his name. This certificate was received November 11, 1929, and on that day delivered to Saad.

Upon the question of whether, on November 2nd, Saad informed a representative of the appellants that he would hold them for any damages, and that, when the stock was delivered on November 11th, he received it under protest, the evidence is directly in conflict. Saad brought this action to recover the difference between the value of the stock ten days after October 10th and its value on November 11th when it was delivered to him.

The record presents but one question, and that is whether the evidence was sufficient to take the case to the jury.

It is first said that Saad, by accepting the delivery of the stock on November 11th, waived any right to recover damages because it was not delivered at the time contracted for. When a contract is made to deliver goods on a certain date and that date is past, the vendee may accept the goods and bring an action for damages that he may have suffered in consequence of the late delivery. He does not, by accepting the delivery at a later date than that contracted for, waive any claim he may have for damages arising out of the delay. *Dignan v. Spurr,* 3 Wash. 309, 28 Pac. 529; *Wisconsin Lumber Co. v. Pacific Tank & Silo Co.,* 76 Wash. 452, 136 Pac. 691.

The measure of damages in such a case is the difference between the market value of the goods at the time when they should have been delivered and their value at the time they were actually delivered; and this rule is applicable to corporate stock. Sedgwick on Damages, Vol. 2 (9th ed.), §§ 735c, 736; *Saunders v. United States Marble Co.,* 25 Wash. 475, 65 Pac. 782; *Belden v. Krom,* 34 Wash. 184, 75 Pac. 636.

Assuming, however, without so deciding, that, if Saad received the stock at the delayed time of delivery and made no objection or protest he would waive his

right to recover damages, in this case the result would be the same. As above stated, at the time the stock was received in "street form," Saad objected to the same, and stated that he would hold the appellants for any damages; and at the time it was delivered to him, he received it under protest. While the evidence was in conflict upon both of these matters, the jury, in response to special interrogatories submitted to them, found that Saad did make the objection and protest.

It is said, however, that his testimony is not sufficient to make an issue for the jury. In this connection, attention is called to the original complaint (the trial being on an amended complaint) and to the testimony that Saad had previously given upon the trial of the case of *Morris v. Blyth,* 168 Wash. 126, 10 P. (2d) 982, in which he was not interested as a party. Even though the original complaint and the testimony upon the trial mentioned were inconsistent with his testimony in this case, the question was nevertheless one for the jury. We cannot say, as a matter of law, that the jury had no right to accept his testimony in this case.

The appellants further say that, since certificates of stock issued by the same corporation are indistinguishable tokens of identical values *(Duel v. Hollins,* 241 U. S. 523), Saad, on November 2nd, was not justified in rejecting the stock certificate in "street form." Saad testified that the stock was to be in his own name, and the jury, in response to a special interrogatory, found that he had directed at the time of the purchase that the certificate be so issued. There can be no question that such a contract, if made, would be valid, and the failure to have the stock issued in the name contracted for would not be a compliance with the contract. *Morris v. Blyth,* 168 Wash. 126, 10 P. (2d) 982, *supra.*

■   The appellants also invoke the rule that damages should be such as may fairly be supposed to have been within the contemplation of the parties when the contract was made, or such as might, according to the ordinary course of things, be expected to follow from a breach thereof.  But that rule, if applied in this case, would sustain a recovery rather than defeat it.  The measure of damages for delayed delivery of goods or corporate stock, as appears from the authorities above cited, being the difference between the value when they should have been delivered and the value when they were actually delivered, was something that must have been within the contemplation of the parties at the time the contract was made, or such as might, according to the ordinary course of things, be expected to follow from the breach.

It is said, however, that a necessary element of Saad's right to recover was his intention to re-sell the stock, if it had been delivered to him at the time contracted for, and that, having failed to offer proof of this fact, his right to damages must fail.  Assuming, without so deciding, that a necessary element of Saad's right to recover was his intention to re-sell the stock, it does not affect the result in this case.  While upon the trial Saad did not testify specifically that he was purchasing the stock for re-sale, he did testify to certain facts from which the jury had a right to infer that he was acquiring the stock, not for the purpose of an investment, but with the intention to re-sell the same. In this regard, he is in part supported by the testimony of a witness called by the appellants.

■   It may, however, well be doubted whether this question is now open to the appellants.  Upon the trial, at the conclusion of the respondent's case and at the conclusion of all the evidence, the appellants challenged the sufficiency thereof and moved for a di-

rected verdict, but at neither time was the particular ground now urged called to the attention of the trial court. A party moving for a nonsuit or for a directed verdict should state the grounds relied upon with such particularity as to point out the defects in the plaintiff's case, if any. *Thompson-Spencer Co. v. Thompson,* 61 Wash. 547, 112 Pac. 655; *Idaho Trust Co. v. Eastman,* 43 Idaho 142, 249 Pac. 890; *Rovegno v. San Jose Knights of Columbus Hall Ass'n,* 108 Cal. App. 591, 291 Pac. 848.

The judgment will be affirmed.

BEALS, C. J., MITCHELL, BLAKE, TOLMAN, HOLCOMB, MILLARD, and STEINERT, JJ., concur.