**Abraham Kuh et al., Appellees, v. Eugene O'Reilly et al., Appellants.**

## Gen. No. 16,932.

1. PARTY WALLS—*windows and projections.* Where owners of adjoining property agree that a wall to be built by one of them "shall be and remain a party wall," and the builder, nine years after constructing a solid wall, cuts holes in the wall and places windows therein, and causes window shutters, exhaust pipes and other projections to extend over the adjoining premises, a court of chancery will order the solid wall to be restored and the projections removed.

2. PARTY WALL—*defined.* The term "party wall" means a solid wall throughout its entire length and height, and implies permanency.

3. PARTY WALL—*estoppel.* Where more than one-half of the foundation of a party wall has been placed on complainant's premises contrary to the agreement, where it was so located with his actual knowledge and acquiescence, he is estopped by such acquiescence.

4. EQUITY—*entire contract enforced.* On the principle that he who asks equity must do equity, complainant cannot have a contract enforced in equity which he himself has first violated, nor will a court in chancery order defendant to perform his agreement without requiring complainant thereupon to fulfil his own obligations.

5. EQUITY—*when court of equity acquires entire jurisdiction it will dispose of matter.* Where a court of equity has acquired jurisdiction of the subject-matter in litigation and of all the parties interested therein, it will determine and dispose of the entire matter, regardless of the prayer of the original bill.

Appeal from the Superior Court of Cook county; the Hon. WIL-LARD M. McEWEN, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1910. Affirmed in part and reversed in part and remanded with directions. Opinion filed January 29, 1913. Rehearing denied. *Certiorari* denied by Supreme Court (making opinion final).

M. J. DUNNE, for appellants.

ROSENTHAL and HAMILL, for appellees; LESSING ROSENTHAL and LEO F. WORMSER, of counsel.

MR. JUSTICE GRAVES delivered the opinion of the court.

Appellants are the owners of a business lot at the northwest corner of the intersection of VanBuren and Franklin streets in the City of Chicago. It faces 100 feet on VanBuren street and 50 feet on Franklin street. Appellees own the lots on the north and west of the lot of appellants. On March 3, 1892, the then owners of the lots above described entered into a written party wall agreement which contained, among other stipulations, the following:

"*First,* That the walls of said building facing the premises of said second party on the north and west

\* \* \* *shall be and remain a party wall* and shall be built upon the dividing lines between the said premises of the parties \* \* \* and said wall shall stand equally upon their respective parcels of land, \* \* \* and said walls shall extend throughout the whole distance of said dividing lines.''

''*Second,* Said second party may join to and use said wall or any part thereof at any time after the same shall have been built, by first causing the said wall to be of proper strength and thickness to sustain the weight which he intends that the same shall bear and further by complying with the other provisions and covenants herein contained.''

\* \* \* \* \* \*

''*Sixth.* Whenever said second party intends to join to and use said wall, \* \* \* built by the other party, the one so using shall first pay to the other party or those claiming under him or them, \* \* \* one-half of the value at that time of so much of said wall \* \* \* including the foundations under the same, as he or they may use, and in computing the value of said wall \* \* \* the services of architects and labor expended and performed in respect thereof shall be taken account of and considered.''

\* \* \* \* \* \*

''*Tenth.* The agreements herein contained shall apply to and inure to the benefit of and be binding upon the heirs and assigns of each party \* \* \* and shall be covenants running with the land. \* \* \* ''

The contract also contained a stipulation for the submission to arbitration of the question of the value of any part of the wall used by appellants, if any disagreement should arise concerning that matter. The then owners of the premises now owned by appellees, shortly after the making of this contract, constructed, and within a year completed, a wall on the north and west line of the lot now owned by appellants, in conformity with the terms of the contract, which wall was a part of a seven-story building then erected and was a substantial, solid party wall throughout its length, height and thickness. In about 1901,

some nine years after this wall was constructed, appellees, against the protest of appellants, cut six large holes through this wall and placed large windows therein and attached to the side of the wall over the premises of appellants, hinges for window shutters and placed window shutters thereon, which extend and swing over the premises of appellants, and made an opening in the wall and placed there a large steam exhaust pipe that projected some eighteen to twenty-four inches over the premises of appellants, and from which appellees caused steam and vapor to be expelled. Appellees also placed certain anchor rods through said wall with heads estimated to be 16 inches across and to extend 4 inches over the premises of appellants. Appellants notified appellees to remove the rods, steam pipes, windows, window shutters and hinges referred to, and to reconstruct the wall, as it was originally constructed and intended to be constructed, and that if the notice was not complied with appellants would build a permanent structure on their lot and would use a part of the wall as a part of their structure, so to be erected without paying appellees any part of the value of the part so used, under the claim that, as appellees had not maintained the wall as a party wall, as they had agreed to do, therefore appellants were not bound by their agreement to pay one-half of the value of the part so used. This notice was not complied with and appellants proceeded to erect a four-story permanent building and in so doing used so much of the wall in question as was necessary, and paid appellees nothing for the part so used. On August 5, 1901, appellees began this suit by filing their bill in chancery against appellants, alleging the ownership of the premises; the party wall agreement; the construction of the wall; that appellants and others were using and about to use part of said wall without paying any part of the value thereof, and praying that appellants be decreed to pay for one-half of the value of the part of the wall so used, and to be used

by them, and that the amount found to be due be decreed to be a lien on the premises of appellants, and that they be enjoined from using it without paying for one-half of the value of the part of the same so to be used. Appellants answered this bill, denied that the wall was built on the dividing line and averred, in substance, the facts above stated, and admitted that they were using part of the wall without paying any part of its value, and averred that by reason of the premises they had a right to so use it and claimed damages of appellees for the breaches of the contract by them already mentioned.

Later appellants filed a cross-bill in which the facts set up in their answer to the bill are reiterated in substance, and in which appellants not only claim the right to use the wall without paying for any part thereof, but also claim to be the absolute owners of that part of the wall resting on their land, and also claim compensation for the strip of their ground occupied by the wall in excess of the amount that should have been so used according to the terms of the contract, and for damages for the violation by appellees of the party wall contract, and pray for an injunction restraining appellees from maintaining and using the wall so encroaching on appellants' premises and from maintaining and keeping the openings in and the various objects projecting from said walls, and for a mandatory order directing appellees to remove the projecting objects and windows, close the window openings and make the wall a solid party wall and to remove so much of said wall as improperly encroaches and rests on appellants' premises. The answer of appellees to the cross-bill admits the existence of the windows and projecting objects, but denies all other material allegations of the cross-bill, and the right of appellants to relief thereunder. The original and cross-bills were heard and disposed of together and the decree appealed from ordered appellees to remove the objects that projected from the walls out over

the premises of appellants, but denied all the other re- lief prayed for in the cross-bill and refused to order appellees to close the window openings and make the wall a solid party wall, enjoined appellants from using any portion of the wall not already being used, until they should pay therefor according to the terms of the contract, ordered appellants to pay to appellees the sum of $5,034.48, as the one-half of the value of the part of the wall then in use by appellants, and the sum of $2,208.21, as interest, and to pay the costs.

The evidence tends to show that more than one-half of the foundation of the wall was placed on the prem- ises of appellants, but it likewise tends to show, and the court found, that it was so located, if not at the ex- press direction of the then owners of the land, it was with their actual knowledge and acquiescence. Such acquiescence estops appellants from now complaining that the wall encroaches on their premises. Keating v. Korpage, 88 Mo. 524; Evans v. Howell, 211 Ill. 85.

The contract is not very explicit in describing the wall to be constructed, except as to its thickness, height and the material of which it was to be con- structed. It is not expressly provided in the contract that the wall shall be a solid wall from its base to its apex throughout its entire length, but it does recite that the "parties are desirous that a party wall shall be erected;" that it is to be built seven stories high by the then owners of the premises now owned by ap- pellees, and that the same "shall be *and remain* a party wall." While it may be assumed the parties might have contracted for the building of a wall with open- ings and windows in it over the premises of appel- lants, no such contract was made and courts are bound to construe and enforce a contract according to the recognized meaning of the terms employed. The term "party wall" has been construed by the Supreme Court of this state in a well considered case to mean "a solid wall throughout its entire length and height."

Springer v. Darlington, 207 Ill. 238. See cases there cited. The parties to this contract evidently so construed and understood that term for the wall, as originally constructed, was a solid wall throughout its entire length and height, and was without projections of any kind over the premises of appellants, and so remained for a period of approximately nine years, when the windows and projections complained of were installed by appellees. This was a clear violation of the agreement. A "party wall" contract with no limitations as to time, implies permanency, and will not be construed as having been performed by the mere erection of a wall built in conformity therewith. It must continue to be a party wall. At least the parties to it and their privies have no right by their voluntary act to destroy it as a party wall. The contract before us has left no doubt as to the intention of the parties in regard to the permanency of the wall. It is expressly stipulated in it that the wall "shall be *and remain* a party wall." Also, it is further provided that the agreements therein contained shall be covenants running with the land. This wall was then, both by the terms of the contract and by the requirements of law, to be and remain a party wall, that is, a solid wall throughout its entire height and length. The proof shows that some nine years after the wall was built appellees cut the openings in the wall complained of, and installed windows therein, before appellants ever attempted to use any part of such wall for their own purposes. The proof further shows that this was done in spite of the protests of appellants, and that although appellees were notified that if they did not so reconstruct the wall as to make it conform to the contract, appellants would use such parts of it as they desired without compensating appellees therefor, and under claim of right. Appellees did not reconstruct it. After appellants had used part of it appellees filed their bill in this case. The moment appellees de-

stroyed this wall as a party wall, and all the time they allowed the conditions created by them to remain by which the character of the wall as a party wall was destroyed, appellees were violating the terms of the contract. Probably the best known rule in equity jurisprudence is that he who asks equity must do equity. No one can hope to enforce in equity a contract which he has himself first violated. Appellees were clearly not entitled to any relief under their bill, because the proof shows they were the first to violate the contract, and by their violation of it they have estopped themselves from insisting upon its performance by appellants, and this is true regardless of whether the wall belonged to the ones who built it or to the ones who owned the land on which it stood. The rights here sought to be enforced are contractual rights. It is the contract that is made the basis of the action. Appellants might well and successfully have rested their defense upon the facts shown under the issues made by the original bill, and the answer thereto, but they saw fit rather to seek affirmative relief by way of a crossbill, in which they pray for an order compelling appellees to perform their contract to maintain the wall as a party wall. This relief they have shown themselves to be entitled to, and a court of equity is the proper forum in which to obtain it. Springer v. Darlington, *supra.* However, like appellees, appellants cannot have equity without doing equity, and while they have shown themselves to be entitled to have the wall made to conform to the party wall agreement, the evidence also shows they have used part of the wall, and equity requires that, when appellees shall make the wall conform to the terms of the party wall agreement, appellants must pay for the part used by them the stipulated amount. The evidence tends to show, and the court found, that $5,034.48 was the value of one-half of the portion of the wall used by appellants at the time they first made use of it. The

order for the payment of the $5,034.48, was, we think, supported as to the amount by the evidence, but was premature, and the order for the payment of the $2,208.21 interest was wholly unauthorized, for the reason that at the time when the part of the wall was used by appellants, and when this suit was commenced, appellees were themselves in default, and nothing was due to or recoverable by appellees from appellants on the contract, nor will anything be so due or recoverable on it until the wall is made to comply with the party wall agreement.   Even on a written contract interest is only recoverable on what is found due on the contract, unless it is so expressly agreed, which is not true in this case.   There is no showing made that appellants were threatening or contemplating the use of any portion of the wall in question, except what they were then using and no reason has been suggested or appears why a party should be enjoined from violating a contract which he neither threatens or intends to violate.   The part of the decree by which appellants were restrained from using any more of the wall than they were then using was therefore erroneous.   A court of equity having acquired jurisdiction of the subject-matter in litigation and of all the parties interested therein should retain jurisdiction and dispose of the entire matter.   All the parties interested in this litigation are before the court and their respective rights are all proper subjects for determination in a court of equity.   It is, therefore, proper that the court should retain jurisdiction and adjudicate the whole matter, regardless of whether the original bill, standing by itself, would warrant granting appellees any relief or not.   The decree of the Superior Court is, therefore, affirmed in part and reversed in part, and remanded with directions to that court to enter a decree granting to appellants, in addition to the relief already granted, an order requiring appellees to remove the windows from the wall in question, and to fill the openings in said wall where the windows now

280    APPELLATE COURTS OF ILLINOIS.

Garden City Sand Co. v. S. Fire Brick & Clay Co. 177 Ill. App. 280.

are and to restore said wall to its original condition, and make the same a solid wall throughout its entire length and height, and that the court retain jurisdiction of the case, and upon its being made satisfactorily to appear to the court that appellees have complied with the order of the court, granting the above relief to the appellants, that the court enter a decree requiring appellants to pay to appellees by a short time to be fixed by the court the sum of $5,034.48, the amount found to be the value of one-half of so much of the wall as has been used by appellants, and that the said decree be made a lien on the premises of appellants in question.

The matter of costs in a case of this character being a matter left to the sound discretion of the trial court, we make no suggestion as to whether the same should be paid by one party or the other or apportioned between them.

*Decree affirmed in part and reversed in part and remanded with directions.*