J. F. EVANS *et al.*

*v.*

V. E. HOWELL.

211    85
213   ¹537

*Opinion filed June 23, 1904—Rehearing denied October 13, 1904.*

1. CONTRACTS—*recovery may be had on common counts on completed contract.* A recovery may be had under the common counts where a contract has been performed and nothing remains to be done but to pay the amount due; and the agreement may be read in evidence to show its terms and measure the damages.

2. SAME—*literal performance of building contract not essential to a recovery.* Technical and unimportant omissions in the performance of a building contract will not defeat a recovery of the contract price, less any damages requisite to indemnify the owner.

3. SAME—*waiver of provisions of contract need not be averred in declaration.* Proof of waiver of particular provisions of a written building contract by participation in acts done in disregard thereof may be proved without averring the same in a declaration in assumpsit to recover the contract price.

4. SAME—*when objection to manner of erecting a party wall is waived.* Parties to a party-wall agreement who accept and use the wall as it progresses, with knowledge of the manner of its construction, must object at the time if the wall is not being built strictly in accordance with the contract, or the objection will be waived.

5. SAME—*when parties are presumed to know of mistake in a contract.* Parties to a party-wall agreement who examine the specifications for the wall and prepare and submit a bid thereon are presumed to know of a mistake in the specifications as to the kind of cement called for by the party-wall agreement.

6. SAME—*what raises an implied promise to pay.* If a party-wall agreement fixes the proportion of cost to be borne by each party and the wall is built and used from day to day by each party as the work progresses, there is an implied promise on the part of each to pay the proportion of the cost specified, even though the contract does not provide for payment to any one; and if one party pays the entire cost to the contractor he may recover from the other the proportion specified in the agreement.

*Evans* v. *Howell*, 111 Ill. App. 167, affirmed.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of McLean county; the Hon. COLOSTIN D. MYERS, Judge, presiding.

This is an action in assumpsit, brought on May 11, 1901, in the circuit court of McLean county by appellee, V. E. Howell, against the appellants, J. F. Evans, Cora E. Evans, Rowland W. Evans, Fred R. Evans, William V. Evans, and Susan M. Evans, heirs of one J. W. Evans, deceased, upon a party-wall agreement under seal to recover latter's proportion of the cost of the party walls, as fixed in the agreement. The declaration consisted of a special count upon the agreement, and the common counts, to which the plea of the general issue was filed. The cause was tried before the court and a jury, and resulted in verdict and judgment in favor of appellee for $1283.33. An appeal was taken to the Appellate Court, and the latter court has affirmed the judgment. This appeal is prosecuted from such judgment of affirmance.

Appellants own an L-shaped lot, abutting on the west and north sides of a corner lot in Bloomington, leased by V. E. Howell, appellee, for ninety-nine years, upon which latter lot appellee proposed to erect a building for the Corn Belt Bank of Bloomington. Both appellants and appellee, having in contemplation the construction of buildings on their respective lots, entered into a written agreement under seal, dated September 15, 1900, binding upon their heirs, executors, representatives and assigns, for the construction of party walls, containing the following provisions involved in this suit: First, the party walls to be upon the lines of the old walls (which had been destroyed by fire); second, the party walls to be built with mortar, made of hydraulic cement with the proper proportion of sand, with provisions for chimneys, vent and smoke flues, ledges, or rests for joists and floor construction, desired by the parties on their respective sides; third, each party at their or his pleasure to proceed with and complete their respective buildings; fourth, the contract for the construction of the party walls to be let separately to the lowest responsible bidder, at the same time that either party became ready to proceed

with their or his building; fifth, appellants to pay two-fifths of the cost to the height, to which their building should be erected, their fire wall to be counted an average of five feet above the roof level of their building, the remaining three-fifths of the cost to that level, and the entire expense above that level, to be paid by appellee; sixth, appellants and appellee to have joint supervision of the erection of the party walls, and the separate contract for the construction thereof to so provide.

The material facts are thus stated by the Appellate Court: "Appellee was first ready to proceed with the erection of his building, and employed one Miller, an architect, to prepare plans and specifications for the same, including the party walls in question. After the same were prepared, he advertised for separate bids on the party walls, and the remainder of the building. The J. W. Evans Sons Company, of which appellants are all stockholders, and several of them officers, and which was engaged in the business of contracting and building, and several others, bid for the work. Both jobs were let to one Snyder, the bid for the party walls being $3959.00. A written contract was then entered into between appellee and Snyder for the construction of the entire bank building, which was to be constructed according to plans and specifications, prepared by said architect, Miller; the work to be done and materials furnished under Miller's personal direction and supervision. At or about the same time a separate contract was also entered into between said parties, which recited that the consideration of $3959.00, the cost of the party walls, was embodied in the contract of even date for the construction of the entire building; that the party walls were to be constructed according to the plans and specifications prepared by architect Miller, and that appellants should have joint supervision of the construction through the superintendent Miller. During the construction of the bank building, the appellants proceeded with the construction of

a building upon their adjoining lot, the joists of which were inserted in the party walls as the work progressed. Upon the completion of the bank building, Snyder demanded the contract price of the party walls of appellants, but they refused to pay the same. He then made demand upon appellee, who paid it, and in turn demanded of the appellants their proportion of said cost under the party-wall agreement. Upon their refusal to pay the same, appellee brought this suit."

The special count set out the party-wall agreement *in hæc verba,* and averred, first, that appellants had notice and took part in the bidding for the construction of the party wall and were present at the opening of the bids; second, that the contract was let to Snyder as the lowest bidder with the consent of appellants; third, that appellants agreed with appellee that George H. Miller should act as supervising architect of the party walls; fourth, that the party walls were erected in accordance with the terms of the party-wall agreement between appellants and appellee; fifth, that the construction of the party walls was supervised by Miller, architect, representing both appellants and appellee, and also by J. F. Evans, representing appellants.

A. E. DeMange, and E. M. Hoblit, for appellants:

To sustain an action to recover money paid for the use of another, plaintiff must aver and prove the actual payment and the defendant's prior request to pay it, or his subsequent assent and approval of the act. *Fowler* v. *Hall,* 7 Ill. App. 335, and authorities cited.

One party cannot voluntarily make himself the creditor of another. *Durant* v. *Rogers,* 71 Ill. 121; *Briscoe* v. *Power,* 64 id. 74.

An implied contract cannot exist when there is an express contract between the parties upon the subject matter. There is no implication of law that a party should pay the reasonable worth of services and mate-

rials beneficial to him and bestowed upon his property with his knowledge and acquiescence, when there is an express agreement under seal between the parties upon the identical subject matter. *Walker* v. *Brown*, 28 Ill. 378.

Where there is a written contract under seal specially declared on in an action of assumpsit, the rights of the plaintiff are determined by the contract alone.   He can not recover under the common counts.  *Phelps* v. *Hubbard*, 59 Ill. 79.

He who undertakes to do a thing not in and of itself impossible, is bound to do whatever is within the scope of private action, without violating the law, to accomplish,—and this, notwithstanding it was and is beyond his power, for the presumption is that he knew, when he made his contract, the difficulty he would encounter in its performance.   Chitty on Contracts, (11th Am. ed.) 1074; Bishop on Contracts, sec. 591; *Walker* v. *Tucker*, 70 Ill. 527; *Hawley* v. *Florsheim*, 44 Ill. App. 324.

A party contracting to construct a party wall, or work of any kind, is presumed to know and understand the terms of his agreement.  If he fails to comply therewith or does his work in a negligent and improper manner, it will not relieve him from responsibility that the owner, knowing of the improper work when it was going on, failed to remonstrate and object.   The doctrine of estoppel *in pais* is based upon a party being misled by conduct upon which he had a right to rely.

A party who has contracted to do good work has no right to rely upon the other party's failure to object to poor work.  *Davidson* v. *Young*, 38 Ill. 145; *Dynet* v. *Eilert*, 13 Ill. App. 99; Bigelow on Estoppel, 662-670; *Hawley* v. *Florsheim*, 44 Ill. App. 325.

The agreement sued on is an agreement for the construction of a party wall at a time when either party should first get ready to erect his building.   The specifications for the materials and the kind of wall to be erected are particularly set out in the agreement.  Either

could then require that a contract be let to build it, and when built it became a party wall, and being built one-half upon the land of each, it became, under the agreement, the joint property of each. Each could convey his land and one-half of the party wall. All that the one who constructed the wall has, is a right of action upon the written agreement for the cost of a wall defined by the agreement, and the party suing must aver and prove that each and every provision of the agreement was carried out by him. *Gibson* v. *Holden*, 115 Ill. 205.

Land of adjoining owners covered by a party wall remains the several property of the respective owners, but the title of each owner is qualified by the easement to which the other is entitled, of supporting his building by means of the half of the wall belonging to his neighbor. *Gibson* v. *Holden*, 115 Ill. 207; *Dehrens* v. *Hoxey*, 26 Ill. App. 417.

Where an agreement is made for the erection of a party wall upon the line dividing two properties and by mistake the wall is erected entirely upon the property of the other party, no recovery can be had for any part of cost of construction. *Grimley* v. *Davidson*, 133 Ill. 116.

Where one party erects a wall on the line between his lot and the lot of an adjoining owner, without any agreement for a contribution, express or implied, and the adjoining owner subsequently builds and uses such wall for his building, he cannot be made to contribute any part of the cost of its construction. *McCord* v. *Herrick*, 18 Ill. App. 423.

Charles M. Peirce, and Barry & Morrissey, for appellee:

Recovery on a special contract may be had under the common counts where only the duty to pay remains unperformed; and the contract may be read in evidence to show its terms and to measure the damages. *Shepard* v. *Mills*, 173 Ill. 223; *Foster* v. *McKeown*, 192 id. 339.

Recovery may be had in such cases where the declaration contains both special and common counts. *Fowler* v. *Deakman*, 84 Ill. 130.

It was not necessary to allege in the special count that the appellants waived some of the provisions of the contract, as waiver or estoppel may be proved without pleading it. *Insurance Co.* v. *Grunert*, 112 Ill. 68; *Insurance Co.* v. *Rogers*, 119 id. 474.

If the contract has been substantially performed and there is no omission in essential points or willful departure from the contract, the contractor is entitled to the contract price, less any damages necessary to indemnify the owner. *Shepard* v. *Mills*, 173 Ill. 223; *Keeler* v. *Herr*, 157 id. 57; *Foster* v. *McKeown*, 192 id. 339.

The provisions of a written contract may be waived by a participation in acts done in disregard of it. *Foster* v. *McKeown*, 192 Ill. 339; *Railroad Co.* v. *Moran*, 187 id. 316.

Where adjoining lot owners erect their buildings at substantially the same time and one of them builds the entire party wall, one-half of which is on each lot, and there is no express agreement, he can compel the other party to contribute a ratable proportion of the cost. *Huck* v. *Flentye*, 80 Ill. 258.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

Appellants make thirty-four assignments of error; and insist that none of the averments of the declaration, as set out in the statement preceding this opinion, were sustained by the evidence. After a careful examination of the evidence, we are satisfied that it tends to establish such averments, and, this being so, the judgments of the lower courts upon the questions of fact, embodied in such averments, are conclusive upon this court.

It is impossible for us to consider separately each one of the assignments of error made by the appellants, but we will notice some of the main contentions of the ap-

pellants, arising out of the rulings of the trial court in
reference to the admission and exclusion of evidence, and
based upon the giving, refusal and modification of in-
structions.

The contract was fully performed; and, therefore, a
recovery could be had under the common counts. Where
the contract has been performed, and nothing remains to
be done but to pay the amount due under it, a recovery
may be had under the common counts, and the agree-
ment may be read in evidence for the purpose of show-
ing its terms and to measure the damages. (*Shepard* v.
*Mills*, 173 Ill. 223; *Foster* v. *McKeown*, 192 id. 339). In the
case of building contracts, a literal compliance therewith
"is not necessary to a recovery, but it will be sufficient
that there has been an honest and faithful performance
of the contract in all its material and substantial par-
ticulars, and no omission in essential points, or willful
departure from the contract; and mere technical and
unimportant omissions will not defeat a recovery of the
contract price, less any damages, however, requisite to
indemnify the owner." (*Keeler* v. *Herr*, 157 Ill. 57; *Shep-
ard* v. *Mills, supra;* 2 Sutherland on Damages,—2d ed.—
sec. 711). A recovery could also be had under the spe-
cial count. The contention of the appellants is, that the
appellee was bound to prove a strict compliance with all
the provisions of the contract. It is true that, while the
performance of the contract in all substantial particu-
lars was established by the testimony, yet where there
was a departure from the strict letter of the contract in
certain particulars, the proof tended to show a waiver
on the part of the appellants. It seems to be the con-
tention of the appellants that proof as to waiver of a
strict performance of the contract was not averred in
the declaration, and, therefore, that the court erred in
admitting proof of the same, and in calling the attention
of the jury to the same in the instructions. There was
no error in this respect for the reason that it was not

necessary to allege in the special count that appellants waived some of the provisions of the contract, as waiver or estoppel may be proved without pleading it. (*German Fire Ins. Co.* v. *Grunert*, 112 Ill. 68; *Continental Life Ins. Co.* v. *Rogers*, 119 id. 474). The provisions of a written contract may be waived by a participation in acts done in disregard of it. (*Foster* v. *McKeown, supra; Chicago and Eastern Illinois Railroad Co.* v. *Moran*, 187 Ill. 316).

The defense, made by the appellants upon the trial below, was based mainly upon three grounds: First, that the contract for the construction of the party walls was not let separately to the lowest responsible bidder; second, that the contract did not provide for joint supervision by appellants; and, third, that the brick above the first floor level were not laid in mortar made by hydraulic cement.

Two contracts were made, one a separate contract between appellee and Snyder, the contractor, for the construction of the party walls, and the other a contract for the construction of the building of appellee. These contracts were executed at the same time. The specifications required that all bidders should put up a certified check for two per cent of the amount of their bids. Appellants, through the J. W. Evans Sons Company of which they were all stockholders and some of them officers, were bidders, and complied with the requirement in regard to the check, thereby recognizing that such requirement was reasonable. The evidence tends to show that Snyder was the lowest responsible bidder. It is true, that a contractor, named Clark, presented the lowest bid for the construction of the party walls, but his bid was not accompanied with a certified check, and when Clark discovered that Snyder's bid for the remainder of the building was higher than his, and that he could not get both contracts, he refused to take the contract for the walls alone, and withdrew his bid. In view of these facts it cannot be said that the contract for the party walls

was not let to the lowest responsible bidder, inasmuch as, Clark being out of the way for the reasons stated, Snyder was the lowest responsible bidder. The proof shows that Snyder did put up a certified check in accordance with the requirements of the specifications. Nor can it be said that appellants had no notice and took no part in the bidding, inasmuch as J. W. Evans, who represented all of the appellants, examined the plans and specifications, and prepared and submitted a bid on behalf of the corporation above designated, which was rejected because it was too high.

By the terms of the party-wall contract it was agreed that the parties thereto should have joint supervision of the erection of the walls, and that the contract therefor should so provide; but the party-wall agreement did not specify particularly how the joint supervision should be exercised. Appellee employed an architect, and, in drawing the contract for the erection of the party walls between appellee and Snyder, the contractor, the architect inserted a provision giving appellants the right of joint supervision through him. No complaint is made as to the competency or honesty of the architect. The contract, thus made between appellee and Snyder for the construction of the party walls, was left with J. F. Evans as the representative of appellants, and no objection was made by him to the provision that the supervision should be exercised through the architect, Miller. The evidence does not tend to show that the appellants claimed that they desired to exercise any joint supervision, except so far as such supervision was exercised by Miller, acting for both parties. The evidence does not tend to show that any complaint was made by appellants that they were deprived of the right of exercising a joint supervision with appellee over the work. On the contrary, the evidence tends to show that several of the appellants actually participated in supervising the construction of the wall. Before the walls were begun, J. F. Evans united

with, and aided, the architect, Miller, in establishing the division line between the properties, and he performed this service for all of the Evans heirs, testifying that he represented them all at that time. The evidence also tends to show that, a few weeks after appellee began the erection of his building, the appellants began the erection of their building. The party wall was built for both buildings. The evidence tends to show that, during the erection of the buildings, instructions were given by the foreman for the joists to be placed in the party wall according to the plans, prepared by the appellants for their own building. The evidence also tends to show that J. F. Evans, who was frequently at the buildings while the walls were going up, and made no complaint of any kind, and made no request to be permitted to participate in the supervision, objected to certain bricks going into the walls; and changes were made by the foreman in charge of the work on appellee's building, and also on the party walls, in order to enable the appellants to set their joists in the party wall. R. W. Evans testified that the plans for appellants' building were prepared by him with the consent of all the appellants, and these plans called for the joists of the building of appellants to rest in the party walls. The construction of the two buildings, that of the appellee and that of the appellants, proceeded at the same time upon their adjoining lots, and the joists of appellants' building were inserted in the party wall as the work progressed. Appellants, having thus accepted and used the party wall as it was built without making any question as to its proper construction, should have objected at the time, if the walls were not being erected in a manner satisfactory to them.' In view of the circumstances already narrated, there was evidence tending to show that appellants waived a strict performance of the terms of the contract with appellee, so far as the matter of joint supervision was concerned.

The party-wall contract provided that hydraulic mortar should be used in the construction of the party walls, while the contract for their erection specified lime mortar, instead of hydraulic cement mortar. Inasmuch as appellants examined the specifications and prepared and submitted a bid before the contract was let, it is to be presumed that they knew that this mistake was made. Although presumed to know it, they never at any time made any complaint or objection while the construction of the walls was going on. The architect, however, testifies that, when his attention was called to this mistake in the specifications, hydraulic cement with a little lime was in fact used. There was other testimony, tending to show that the walls were laid with cement mortar; and so it was a question of fact for the jury whether the walls in question were laid in accordance with the terms of the contract sued on, or whether any deviation from those terms was waived by the appellants.

The facts of this case, as thus detailed, bring it within the rule announced by this court in *Huck* v. *Flentye*, 80 Ill. 258, where it was said: "It appears from the evidence that appellant and appellee were equally ready and anxious to re-build. The wall was as much a necessity for appellee as it was for appellant. It was built at the same time appellee's building was, and appellee has had the same benefit of it that appellant has had. That appellee was ignorant of its being built is not pretended. The same architect made the plans for both buildings. Appellee was often present as the work progressed, and, at his request, work on the wall was delayed, to give him time to put in his joists. Appellee says, that he never agreed to build any part of the wall or pay for its being built, and much stress is laid on this. Suppose that he did not. Appellant never agreed to build his part for him, and release him from liability. He knew the wall had to be built to enable him to complete his building, and that it had to be paid for. He did not forbid its

construction or give notice that he would not be lia-
ble, and he had agreed that they would build together.
The wall was expressly built for the use of both build-
ings, and, as we understand the cases cited by appel-
lant's counsel, herein it differs from those.    Appellant
did not here first erect his building, constructing one-half
of this wall on appellee's property without any agree-
ment in regard thereto, and appellee afterwards erected
his building, but both buildings were erected, substan-
tially, at the same time."    And in the *Huck case* it was
said by the court, quoting from Greenleaf on Evidence,
that "it is not necessary to the plaintiff to prove an ex-
press assent of the defendant, in order to enable the
jury to find a previous request; they may infer it from
his knowledge of the plaintiff's act, and his silent ac-
quiescence."

We concur in the following views expressed by the
Appellate Court in their opinion: "While the party-wall
contract provided that hydraulic mortar should be used
in the construction of the party walls, and the contract
for their erection specified lime mortar, this fact must
have been known to J. W. Evans when he prepared and
submitted the bid of appellants' corporation.    Inasmuch
as he made no objection at the time, we think that ap-
pellants are estopped from doing so after having had
actual notice through J. W. Evans of the fact, and per-
mitting the lime mortar to be used.    If he had, when
the specifications were published, or at any time before
the erection of the walls was begun, called the attention
of appellee to the fact that the specifications were not
in accordance with the party-wall agreement, appellee
might readily have caused the error to be rectified, and
he should, we think, have been afforded an opportunity
to do so.    'The law imposes upon a party subjected to in-
jury from a breach of contract, the active duty of mak-
ing reasonable exertions to render the injury as light
as possible.    If the injured party through negligence or

211—7

willfulness allows the damages to be unnecessarily en-hanced, the increased loss justly falls upon him.' (*Hart-ford Deposit Co.* v. *Calkins,* 186 Ill. 104). To hold that appellants may evade payment of their proportion of the cost of the party walls solely because of an apparently inadvertent deviation from the contract, of which they, through their representative, were made aware in ample time to remedy the same, would be, in our opinion, con-trary to the law and abhorrent to reason and justice."

Under the terms of the party-wall agreement, it was evidently the intention of the parties that the one, first ready to proceed with the erection of his building, should at the same time erect the party walls, and, when they were erected, the other party should pay his ratable pro-portion of the expense, as specified in the contract, on demand. It is not stated that such proportion should be paid to the contractor, and, therefore, the contention of the appellants that, if they were bound to pay, they were only obliged to pay to the contractor, and not to appellee, is without force. No contract relation existed between appellants and the contractor, Snyder. They were not indebted to Snyder in any manner; nor can it be said that, by paying Snyder for the construction of the walls, appellee voluntarily made, or attempted to make, himself the creditor of appellants without their consent. Even if the contract contains no promise by appellants to pay appellee any portion of the cost of the construction, it may be said that it contains no promise that either party should pay the contractor. The fact, that the wall was built by appellee under the contract in pursuance of the desire of appellants to have it built, and of their willingness to pay a certain proportion of the cost, together with the fact that appellants and ap-pellee erected their buildings at the same time, and appellants accepted and used the walls from day to day as the work progressed, raises an implied promise on the part of appellants to pay their proportion of the cost.

The rulings of the court below, and the action of the court in giving, refusing and modifying instructions, were all in accordance with the views herein expressed. We are, therefore, of opinion that no error was committed, which would justify us in reversing the judgment.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*