# CROAK v. TRENTMAN.

No. 4637. Opinion Filed July 20, 1915.

Rehearing Denied August 13, 1915.

(150 Pac. 1088.)

1. **BROKERS—Compensation—Sufficiency of Services.** Under a contract between an owner and a broker for the sale of lots, by the terms of which the owner employs the broker to sell lots at a stated price, on the installment plan, part cash and the balance in monthly payments, to be evidenced by a sale contract, for a commission of 17½ per cent on the purchase price of each lot, 10 per cent out of the cash payments, and the remainder six months from date of sale, where such broker procures buyers ready, able, and willing to purchase said lots at the price and on the terms agreed upon, who make the cash payments and execute enforceable contracts for the balance of the purchase price, which, in the absence of fraud or collusion, are presented to, received, accepted and retained by the owner, the broker fully complies with his contract, and is entitled to his full commission, even though such purchasers fail to carry out their contracts, defaulting in the payments thereon.

2. **CONTRACTS—Breach—Waiver.** The right to sue for damages for the breach of a contract may be waived by the party not in default himself, and this usually occurs where such party yields an unqualified acquiescence in the breach.

(Syllabus by Dudley, C.)

*Error from District Court, Oklahoma County;*
*W. R. Taylor, Judge.*

Action by H. C. Trentman against Edward Croak. Judgment for plaintiff, and defendant brings error. Affirmed.

Lawrence Mills, for plaintiff in error.

Griffith & Pritchard, for defendant in error.

Opinion by DUDLEY, C. On February 21, 1911, the defendant in error, plaintiff below, commenced this action in the superior court of Oklahoma county, against the plaintiff in error, defendant below, to recover the balance due him as commission in connection with the sale of certain real estate, known as Stander's First addition to Oklahoma City, under a contract entered into between them on December 29, 1909. The defendant filed an answer and cross-petition, admitting the execution of the contract, but denying that he was indebted to plaintiff in the sum sued for, or any other sum, as commission or otherwise, on account thereof or in connection therewith, and asking damages against the plaintiff for breach of said contract. The cause was later transferred, by agreement, to the district court of Oklahoma county, where it was thereafter tried, resulting in a judgment in favor of the plaintiff for the amount sued for, the trial court, at the conclusion of the testimony, at the request of the plaintiff, having directed the jury to return a verdict in his favor for the amount sued for. From this judgment, the defendant has appealed to this court. The parties will be referred to here as they were in the lower court.

The facts necessary to be considered, in substance, are: On and prior to December 29, 1909, the defendant owned, or had contracted to purchase what was known as Stander's First addition to Oklahoma City, and also had under consideration the purchase of other property, which he intended to plat as additions to Oklahoma City; on said day he and the plaintiff entered into a written contract, by the terms of which he employed the plaintiff

to sell the lots in said addition, and any other additions which he might plat, for a stipulated commission of 17½ per cent. of the purchase price of each lot, payable as follows: 10 per cent. out of the cash payment (which was to be at least 20 per cent. of the purchase price of each lot), and the remainder thereof within six months from the date of sale; however, if the entire purchase price was paid in cash, then the total commission was to be paid out of the same. The portion of the contract necessary to be considered is as follows:

"The party of the first part hereby agrees to give and does hereby give and grant to the party of the second part the exclusive right to negotiate sales of all lots and blocks contained in Stander's First addition to Oklahoma City, and all other additions that may be platted by first party in pursuance of a certain contract between Edward Croak and Maggie P. and T. A. Stander, except those lots in said addition that have already been sold by first party, and it being further understood and agreed by the parties hereto that the party of the first part reserves the right to either personally sell and dispose of, or reserve from selling such lots as he may desire up to 10 per cent. of the unsold lots in Stander's addition and up to 10 per cent. of all lots that may be platted in pursuance of the contract between Croak and Stander."

"The party of the first part further agrees that the second party shall receive for his services 17½ per cent. commission for selling said property and that said second party shall have 10 per cent. of the first cash payment when lots are sold on the regular terms of 20 per cent. cash and the balance of his commission on or before six months from time of sale, it being further understood that when lots are sold for cash the party of the second part is to receive his 17½ per cent. when the cash is paid for lots."

"Said second party further agrees to sell the lots on the terms herein stated and to make sales of said property amounting to not less than $9,000.00 before February 1st, 1910, and to sell an equivalent amount every 30 days thereafter during the life of this contract, and if said second party should fail to sell $9,000.00 worth of property before February 1st, 1910, or an equivalent amount every 30 days thereafter, then in that event the party of the first part may at his option declare this contract null and void."

The plaintiff advertised the addition at his expense, and commenced selling lots under the contract in February, 1910. At the time the contract was executed, it was the intention of the parties that the plaintiff should commence selling lots in January, but the delay was by mutual consent. The lots were to be sold under written contract, and paid for on the installment plan. A copy of the contract under which the lots were to be sold was attached to the contract between the plaintiff and the defendant; at least 20 per cent. of the purchase price was to be paid in cash, and the remainder was to be paid in monthly installments, evidenced by promissory notes, signed by the respecve purchasers, payable to the defendant. Under the term of said sale contract, the defendant was not to execute and deliver a deed until the full purchase price was paid, and in the event the contract was not paid out, all money paid thereon was forfeited to the defendant, as liquidated damages. The plaintiff continued in the employ of the defendant for approximately five months, during which time he sold $44,987.50 worth of lots. The various purchasers made the cash payments and executed notes and contracts in accordance with said contract. These notes and contracts were all turned over to the defendant, and by him received, accepted, and

retained. The plaintiff received 10 per cent. commission out of the various cash payments, and the remainder thereof was paid over to the defendant. More than 50 per cent. of the sale contracts were paid out in full; a large per cent. of those who did not pay out, as a matter of fact, only made the first payment. The plaintiff did not sell $9,000.00 worth of lots each month during the five months he was in the employ of the defendant. However, during some months, he sold considerably more than that, but did not quite average $9,000.00 each month. Notwithstanding the fact that the plaintiff did not sell $9,000.00 worth of lots each month, the defendant did not exercise the option in the contract to terminate it on account thereof. The plaintiff was paid a 17½ per cent. commission on all contracts that were paid out in full. He sued for and recovered 7½ per cent. commission on all sale contracts that were not paid out in full.

The first question to be determined is whether or not the plaintiff is entitled to recover the remaining 7½ per cent. commission on the sale contracts that were not paid out. The defendant insists that it was incumbent upon the plaintiff to show that the purchasers who contracted to purchase lots were financially able to carry out the contract, or that he had a right to show, as a matter of fact, that they were not financially able to do so. Upon the other hand, the plaintiff contends that all he was required to do, under his contract of employment, was to procure a purchaser ready, able, and willing to purchase the lots at the price and upon the terms agreed upon in said sale contract, and that, when the purchaser made the cash payment, entered into the sale contract, and executed the notes for the deferred payments, in

accordance therewith, and the defendant received, accepted, and retained the same and paid to the plaintiff 10 per cent. of the cash payment, this constituted a complete performance of his contract and entitled him to receive the full commission provided for in the contract, even though the purchasers failed to carry out the contract. Plaintiff's contention is correct. The contract of employment is clear and explicit as to the commission to be paid and when it is to be paid; the plaintiff procured purchasers who made the cash payments and executed enforceable contracts for the remainder of the purchase price. This is all he was required to do, and when the defendant received, accepted, and retained the same, he became liable for the commission agreed to be paid. There is nothing in the contract of employment that contemplates that the remainder of the plaintiff's commission shall be contingent upon the purchasers paying out the contracts. The contracts were enforceable, and it was the duty of the defendant to enforce them or forfeit the payments, as provided for therein. There is no contention that the plaintiff secured any of the unpaid contracts by fraud or collusion, and there can be no doubt about his right to recover the entire commission. *Scully v. Williamson*, 26 Okl. 19, 108 Pac. 395, 27 L. R. A. (N. S.) 1089, Ann. Cas. 1912A, 1265; *Lowenstein v. Holmes*, 40 Okl. 33, 135 Pac. 727; *Stewart v. Fowler et al.*, 53 Kan. 537, 36 Pac. 1002; *Lyman v. Wagner et al.*, 90 Kan. 12, 132 Pac. 988; *Root v. Greadwohl* (Cal.), 128 Pac. 418. In the case of *Lowenstein v. Holmes, supra*, it was said:

"Where a broker is employed to procure a purchaser or lessee for property, and presents to his principal a lessee, it is for the principal then to decide whether the person presented is acceptable, and if, without fraud,

concealment, or other improper practice on the part of the broker, the principal accepts the person presented, and enters into an enforceable contract with him, the broker is entitled to compensation for his services, although it subsequently turns out that the lessee is not able to comply with his lease contract, defaulting in his payment of rentals thereunder."

Having reached the conclusion that the plaintiff, under the terms of the contract, was entitled to recover the remaining $7\frac{1}{2}$ per cent. commission on all sale contracts that were not paid out in full, we now pass to a determination of the question as to whether or not the trial court committed error in excluding the testimony offered by defendant, on his cross-petition for damages for breach of the contract in failing to sell $9,000 worth of lots before February 1, 1910, and each succeeding 30 days thereafter during the time he worked. A determination of this question involves the construction of the last clause of the contract, hereinbefore set out. The plaintiff did not sell $9,000 worth of lots by February 1, 1910, nor did he do so each succeeding month, in accordance with said contract. As to this, there is no controversy. In February he sold $21,412 worth of lots, and in March $12,450. In April, May, and June he sold less than $9,000 worth of lots each month. He commenced work in the latter part of January and quit in the early part of July, so he only worked a little more than five months, and he lacked only a small amount of averaging $9,000 per month during the time he worked. He delayed commencing work, with the consent of the defendant, so the question of his failure to sell $9,000 worth by February 1st is eliminated. It is admitted that the defendant did not exercise his option, under the contract, to terminate it on plaintiff's failure to sell at least $9,000

worth each month. As a matter of fact, he made no objection to plaintiff's breach of the contract in this respect, but, upon the other hand, with full knowledge of the breach, he continued the plaintiff in his employ, accepted the sale contracts, and paid the plaintiff his share of the commission without protest; in other words, he consented to, acquiesced in, and waived the breach of the contract, and received and accepted the benefit of the plaintiff's services without objection or protest on account of the breach. There is no provision in the contract as to its duration, but the defendant expressly reserved the right to terminate it on the failure of plaintiff to sell $9,000 worth of lots each month during the time he worked. He failed to exercise the option, with full knowledge of the breach, and continued the plaintiff in his employ, receiving and accepting the benefit of his services, without objection, thereby fully and completely waiving the breach.

Considering this particular provision of the contract in connection with the nature and character of the employment, we conclude that the option provided for therein was for the benefit and protection of the defendant. He failed to exercise the option, with full knowledge of the breach, and continued the plaintiff in his employ, received and accepted the fruits of his labor, without objection or protest, and thereby waived the breach of the contract, and he cannot recover damages on account thereof, and therefore the trial court did not commit error in excluding the evidence offered. Elliott on Contracts, vol. 3 secs. 2050, 2051; *Barton v. Gray*, 57 Mich. 622, 24 N. W. 638; *Evans v. Howell*, 211 Ill. 85, 71 N. E. 854; *Boone v. Templeman et al.*, 158 Cal. 290, 110 Pac. 947, 139 Am. St. Rep. 126; *Bailey et al. v. Knight et al.*

(Tex. App.), 17 S. W. 1062. In Elliott on Contracts, sec. 2051, *supra,* it is said:

"The right to sue for damages for the breach of a contract may be waived by the party not in default himself, and this usually occurs where such party yields an unqualified acquiescence in the breach."

The facts bring this case squarely within this rule, and the judgment of the trial court should be affirmtd.

By the Court: It is so ordered.