E. A. STEININGER CONSTRUCTION COMPANY *v.* BATES.

Opinion delivered June 18, 1923.

1.   SALES—DELAY IN SHIPMENT—DAMAGES.—Where supply merchants agreed to ship "about February 20" certain material to defendant to be used in erecting a building, and failed to ship same until October 11, defendant, in a suit for the purchase money of such material, was entitled to counterclaim the following items of damage, viz., the cost of shipping material to a wrong destination and paid for by defendant, the additional cost of using a different material during delay in shipment, the price of material left over on account of using different material, and the cost of maintaining construction crews during the period of such delay.

2.   SALES—DELAY IN SHIPMENT—CONSTRUCTION OF CONTRACT.—Where plaintiffs undertook to ship material about February 20, and failed to ship until October 11, they were not excused for such delay by a clause in the contract exempting them from delays

caused by "strikes, fires, accidents, and acts of providence and general conditions beyond seller's reasonable control", as the clause "general conditions beyond seller's reasonable control" refers to the class of obstacles mentioned in the preceding language, and do not justify the plaintiffs in awaiting their own convenience to furnish the material.

3. SALES—MUTUALITY OF CONTRACT.—A contract of sale by which the sellers were not bound to ship the articles sold unless they could procure it for that purpose, was lacking in mutuality and not binding on either party.

4. SALES—DELAY IN SHIPMENT—WAIVER.—Where the sellers of material to be used in the construction of a building failed to ship the material within the time agreed, the acceptance of the material by the buyer was not a waiver of the delay.

Appeal from Arkansas Chancery Court, Northern District; *John M. Elliott*, Chancellor; reversed.

*Seneca C. Taylor* and *Jno. F. Clifford*, for appellants.

Appellants were entitled to damages for breach of the contract in delay of the shipment of tiling and to recoupment thereof in the amount claimed, and the chancellor's findings to the contrary are clearly against the preponderance of the testimony. Appellees were more than eight months late in the delivery of the materials under the terms of the contract, and are answerable for the resulting damages.

*Sam T. & Tom Poe*, and *Louis Tarlowski*, for appellees.

The chancellor's findings are not against the weight of the testimony. The delay in the shipment of the tiling beyond the date specified in the contract caused no damage to appellant, since it was not yet in a position to use it even on the date of their letter, June 7, about three and a half months after the delivery date. Under the clause in the contract providing the seller shall not be subject to any damage or penalties for delays caused by "strikes, etc.," appellees are not answerable for damages, and the decree should be affirmed.

*Seneca C. Taylor* and *Jno. F. Clifford,* in reply.

There was no waiver of a timely performance of the contract, nor were appellees relieved from liability for nonperformance by the provision against damage for delays caused by "strikes, etc." 140 Ark. 397; 126 Ark. 50; 191 S. W. 920.

McCulloch, C. J. Appellees, a partnership composed of F. D. Bates and B. J. Chamblin, instituted this action against appellant, a foreign corporation, to recover an amount alleged to be due for the price of certain building material (tiling) sold and delivered under written contract. The total account for the purchase of the tile was $2,050.75, according to prices stated in the contract, subject to a credit for freight paid by appellant, which, the contract provided, was to be refunded, leaving a balance of $1,718.98 claimed to be due by appellees.

Appellant admitted in its answer that the account for the price of the tiling was correct, and pleaded a credit of $562.92 for freight paid, leaving a balance of $1,487.83. It also pleaded a counterclaim for certain items as follows: $165.75, tiling shipped to another destination and paid for; $387.92, additional cost of using brick instead of tile during the period of delay in delivery of tile under the contract; $300 for the price of tiling left over on account of having to use brick during the period of delay in deliveries; and the sum of $508, cost of maintaining construction crews during the period of delay. The credits claimed left a balance of $126.16 due appellees, which appellant conceded and offered to pay.

On the final hearing the court rendered a decree in favor of appellees for the amount of the account after crediting the freight claimed in appellant's cross-complaint, $562.92, and the item of $165.75 for tiling shipped to Little Rock, the decree being for a balance of $1,322.08.

Appellant has its principal office at St. Louis, and is engaged in building construction. It took a contract to

construct a large building in Stuttgart, Arkansas, to be used as a bank and hotel. The plans called for the use of tiling, and appellees, being engaged in the business of selling such material, entered into a contract with appellant to furnish the specified amount of the material for use in the building at Stuttgart. There was a written contract between the parties, entered into on November 12, 1919, which specified the terms and the quantity (approximately) of the material, and also contained a provision that said material was "to be shipped about February 20 to E. A. Steininger Construction Company at Stuttgart, Arkansas." The contract specified the material to be furnished thereunder as follows:

| "Quantity Approximately | Description | Price |
|---|---|---|
| 8,800 | 8x12 interlocking tile, including specials, | $ 125.00 |
| 15,000 to 17,000 more or less | 6x12 interlocking tile, including specials, | 125.00 |

"The 6-inch interlocking to take a reduction in price, provided we can get it made in Arkansas in time for the job."

There was also a provision that the prices were to be "f. o. b. seller's plant, freight allowed to destination," and that the purchaser should pay the freight at destination and take credit for the amount. Another clause in the contract which, it is claimed, is material to the present controversy, reads as follows:

"All promises of delivery are as closely estimated as possible, but seller does not guarantee deliveries, the same being contingent upon strikes, fires, accidents, acts of Providence, and general conditions beyond seller's reasonable control, and seller shall not be subject to any damages or penalties for delays caused thereby."

The account filed with the complaint shows the dates of shipment. The first shipment under the contract was July 9, 1920, of 5,000 standard interlocking tiling, and

2,750 standard interlocking tiling on the same date; the next shipment was October 11, 2,800 6x12x12 hollow building tile, and the last shipment was on November 8, 1920, 4,000 6-inch interlocking tiling. According to the testimony in the case, the shipment of July 9 did not reach destination until late in August, and the shipment of October 11 did not reach destination until some date in November. The testimony does not show the date of the arrival of the last shipment at destination.

Appellant introduced testimony to show that, on account of the delay in shipment, it became necessary to use brick instead of tiling, and that there was an additional expense incurd of $387.92 on that account, and that, during the period of delay, the construction crews were held in waiting at an expense of $508, and that when the building was completed there was left over tiling of the value, at cost price, of $300, for which there was no use.

We are of the opinion that appellant established its claim of damages by a preponderance of the evidence, and that it is entitled to recoup these damages, if there was a breach of the contract which caused unnecessary delay in delivery of the material.

It is undisputed that there was a suspension of the work at Stuttgart on account of the owners of the building holding up construction for lack of money to make payments, but there is evidence in the record that there was delay caused by the failure of appellees to make shipment of tiling in time. In other words, the proof shows that the work was held up by the failure of appellees to make delivery, and that appellant sustained damages on that account. The other items in the counterclaim, or cross-complaint, are supported by a preponderance of the testimony. The question therefore which remains for decision is whether or not appellees broke the contract with respect to the time of delivery.

The contract specified that deliveries were to be made about February 20, which was two months after

the date of the contract. According to the undisputed evidence, there was not a single shipment of tiling until July 9, and the shipment did not reach destination until some time in August. It is true that the tiling was not actually needed by appellant in construction until midsummer, and there was no complaint about the delay until the time approached for the tiling to be put into the building. There is a letter in the record, addressed to appellees on June 7, in relation to shipment, and which contains a notice to appellees that brick-laying would begin within six weeks or two months after that date, and that material should be on the ground within that time. The first shipment contained only eight-inch tiling, and, according to the evidence, it was necessary to have the six-inch interlocking tiling to be used first. When the first shipment arrived, appellant notified appellees that it could not use the other tiling until the six-inch tiling was received. There was considerable correspondence between the parties from time to time, and appellant was continually insisting upon a shipment of the six-inch tiling. During this correspondence appellees suggested to appellant that 6x12x12 hollow tiling be substituted for the six-inch interlocking tiling at a different price, and, on October 8, appellant wired to appellees its willingness to accept one car of the hollow tiling as a substitute. In accordance with this agreement a carload of six-inch hollow tiling was shipped on October 11, reaching destination some time in November.

It is obvious from the testimony that there was an unreasonable delay in the shipment of material. Appellees reserved in the contract a period of sixty days within which to deliver the material, but there was no shipment until nearly six months after the stipulated time, and then it was a shipment of eight-inch tiling, which could not be used until after the six-inch tiling had been used. It is true there was no express notice, either in the contract or in the correspondence between the parties, until after the shipment of the eight-inch

tiling, that the six-inch tiling would have to be used first, but the contract itself required shipment of all of the material, not merely a part of it, within the time specified. Besides that, appellees were expressly notified, as soon as the eight-inch tiling was received, that it could not be used until after the six-inch tiling had been received and used. There is no satisfactory explanation of the delay after that time.

Appellees offer justification for the delay under the clause of the contract exempting them from damages on account of delays caused by "strikes, fires, accidents, and acts of Providence, and general conditions beyond seller's reasonable control." The testimony does not support appellees' contention that the unreasonable delay resulted from any such causes. All that is fairly inferable from the testimony is that it was not reasonably convenient for appellees to get the tiling ready for shipment at an earlier date. The language does not justify the interpretation that appellees should be allowed to await their own convenience to furnish the material. The words "general conditions beyond seller's reasonable control" refer to the class of obstacles described in the preceding language, such as strikes, fires, accidents, and acts of Providence. If the contract is to be construed in accordance with the contention of appellees, they were not bound to ship the material unless they could procure it for that purpose, and then it was lacking in mutuality, and was not binding on either party, for that would be, in effect, making the delivery of the material optional with the seller. *Weil* v. *Chicago Pneumatic Tool Co.,* 138 Ark. 534.

The acceptance of the material on final delivery was not a waiver of the delay. Appellant could have declined acceptance and recovered damages for any differences in the cost of the material. It also had the right to accept the material at the contract price and sue for the delay in delivery.

Our conclusion therefore is that the chancery court erred in not allowing the credits claimed by appellant, so the decree is reversed, and a decree will be entered here reducing the amount of appellees' recovery to $126.16, the amount tendered by appellant.