No. 29,914.

The Nichols & Shepard Company, *Appellant*, v. O. F. Parker, *Appellee*.

Opinion filed October 10, 1931.

*Chester I. Long, Claude I. Depew, W. E. Stanley,* all of Wichita, and *Arthur C. Scates,* of Dodge City, for the appellant.

*Carl Van Riper,* of Dodge City, for the appellee.

The opinion of the court was delivered by

Smith, J.: This was an action on a note. Defendant answered and filed a counterclaim. Judgment was for plaintiff for a smaller amount than the note on account of the counterclaim. Plaintiff appeals.

The note sued on was one of several given in payment for a thresher-combine. Appellee signed a contract to purchase a certain combine, which had been used as a demonstrator by the dealer for appellant at Dodge City. This contract was executed June 27, 1928. At that time the machine was all set up ready to go at the place of business of the agent for appellant. The order had to be sent to Kansas City for approval. When it came back approved appellee presented himself at the dealer's and asked for his combine. He was informed that the particular machine that he had ordered had been sold, but that the company was shipping him another. This was on July 3. Appellee began harvesting on July 4 with an old combine which he had. While he was in Dodge City on the 3d appellee wired the company that his combine was not there yet, and asked for the car number so it could be traced. The company wired back the car number and that it had just passed through Kansas City and would be there next day. After some talk with the agent of appellant, appellee agreed that if the machine arrived there

next day—that is, July 4—he would take it. The machine arrived in Dodge City on the 4th. Settlement papers were signed by appellee on the 5th. About two days were taken in putting the machine together, so it was the evening of July 6 before appellee actually got the machine. He had about 900 acres of wheat. It was all ready to cut on July 4. It commenced to rain, and from that day continued to rain, and harvest was stopped by wet weather nearly half the time. It took till August 16 to finish. In the meantime his wheat fell down, some of it shattered off on account of being too ripe, and it became of poorer quality. The market also declined. There was a marked difference in the price appellee received for his wheat as he sold it from what he would have received had he been able to harvest and sell it during the early part of July. He could have cut about fifty acres of wheat a day at the beginning of harvest when the wheat was standing in good shape.

Appellee paid the first note when it was due. When the last note for $1,800 came due he refused to pay it. Suit was brought. Appellee filed an answer and cross petition, admitting the execution of the note and claiming an offset on account of damages by reason of defects in the machinery, and also on account of delay in delivery. At the trial the claim of breach of warranty on account of defects was abandoned and the sole issue submitted to the jury was the amount of damages, if any, sustained by appellee by reason of delay in delivery. Appellee introduced his evidence. Appellant demurred thereto, and when it was overruled stood upon his demurrer. The jury found by a special verdict that appellee had been damaged on account of such delay in the amount of $1,266.50. Judgment was entered for the difference between that amount and the amount sued on. There are four questions presented by this appeal. They are as follows:

"1. Under the contract of purchase could plaintiff be held for damages on account of delay in delivery?

"2. Did the facts admitted by the pleadings and proved by defendant's evidence show an unconditional acceptance of the machinery and a waiver of any claim for damages on account of delay in delivery?

"3. Did the pleadings allege facts sufficient to constitute a cause of action for damage on account of delay in delivery?

"4. Did the proof offered by defendant establish facts which would constitute a cause of action for damages on account of delay in delivery?"

Appellant points out a clause in the contract of purchase as follows:

"The machinery above described is purchased and sold and received subject to the following express warranty and agreement and no other, namely:"

It then sets out various conditions with which appellee was required to comply and provided that "failure by the purchaser to fulfill any of the requirements above provided shall be an unqualified acceptance of said machinery." It is argued that the machinery was sold, purchased and received subject to the liabilities expressed therein and no other. It is also argued that the contract provides that "the company shall not be responsible for delay in transit." The trouble with that argument is that there was no shipment contemplated when the contract in question was executed. The company agreed to sell the buyer a machine that he could use and that he knew was there in Dodge City for him when his contract came back approved. Under the circumstances we· conclude that the clause referred to did not limit the liability of the company.

Appellant next urges that the facts admitted by the pleadings and proved by defendant's evidence show an unconditional acceptance of the machinery and a waiver of any claim for damages on account of delay in delivery. There are two lines of authorities on that question. One line holds that the acceptance at a later date waives damages for delay in delivery unless the acceptance is qualified by a reservation of the right to claim damages for delay. (See *Minneapolis Threshing Machine Co. v. Hutchins,* 65 Minn. 89, 67 N. W. 807.)

This court adopted the other rule in *Johnson v. Glass Co.,* 74 Kan. 762, 88 Pac. 52. There it said:

"The mere acceptance of a purchased article after the agreed time of delivery does not constitute a waiver of damages for failure to deliver in time, unless such acceptance is accompanied by other circumstances which manifest an intention on the part of the buyer to waive such damages." (Syl.)

Appellant in its brief frankly concedes the above to be the rule, but points out what is urged to be circumstances which manifest an intention on the part of appellee to waive damages. We are unable to agree with appellant that there is any evidence in the record of such circumstances. This man came to get his combine, which he had a right to expect to be in Dodge City waiting for him on the 3d and was persuaded after some difficulty to wait till next day. When it came two or three days were taken up in putting the machinery together. Indeed, the circumstances indicate that appellee was put

off from day to day expecting each day to be the one on which his machine would be delivered.

Appellant urges that neither the pleadings nor the proof of defendant showed facts which would constitute a cause of action for damages on account of delay in delivery.

It pointed out that the petition does not contain any allegation that the purchaser could not obtain other machinery and that there is no allegation that the company knew that any loss or damage would result from the delay..

The petition did contain an allegation that the machine was purchased to use in the harvest of wheat in the summer of 1928—that the purchaser had 900 acres of wheat of his own to cut which was to be harvested with the machine ordered—and that all these facts were known to the company. The case of *Sutter v. Harvester Co.*, 81 Kan. 452, 106 Pac. 29, is cited by appellant as supporting this position. We conclude that it really supported the position of appellee. This was a case where a buyer was suing the Harvester company for delay in delivering machines. The damages claimed were due to wheat becoming too ripe and shattering. In discussing that question the court said:

"It was not essential to a cause of action that the defendant should have known that loss unpreventable by ordinary diligence would inevitably result from a delay in delivery. If it knew that such loss would be a natural and probable consequence of its default the effect was the same." (p. 456.)

In the case at bar it was alleged in the cross petition that the company knew that the machine was purchased for the harvesting of the 1928 crop, and the company must have known that when wheat reaches a certain stage in its growth it becomes ripe, and if not cut immediately rapidly becomes overripe.

Since all these things appear in the record we have concluded that the judgment of the district court should be affirmed. It is so ordered.