## ROBBERSON STEEL CO. v. HARRELL
### et al.
#### No. 3815.

United States Court of Appeals
Tenth Circuit.
Sept. 12, 1949.

A. W. Gilliland, Oklahoma City, Okl., for appellant.

C. J. Watts, Oklahoma City, Okl. (Looney, Watts, Ross, Looney & Smith, Oklahoma City, Okl., on the brief), for appellees.

Before PHILLIPS, Chief Judge, and BRATTON and HUXMAN, Circuit Judges.

BRATTON, Circuit Judge.

The United States, acting through the Bureau of Reclamation, prepared plans and specifications for the development of an irrigation district in the vicinity of Altus, Oklahoma. The program contemplated the letting of contracts to private contractors for the construction of different parts of the canals, ditches, bridges, culverts, flumes, and other structures. A contract was entered into with Barney W. Harrell and May T. Stebbins, partners composing the firm Stebbins Construction Company, hereinafter referred to as Stebbins, to construct the Ozark Canal, and the bridges, culverts, and other structures incident to its construction. The structures were to be of concrete, reinforced with steel. Stebbins entered into a contract with Robberson Steel Company, hereinafter referred to as Robberson, to furnish the steel required for the structures, estimated at two hundred and forty tons. The contract was dated March 18, 1947. It provided that delivery of steel should begin ninety days from that date and should be completed in six months from the date set for the initial delivery, and it further provided that invoices rendered for steel shipped were due in thirty days from the invoice date. Later Stebbins entered into another contract with Robberson for the bending of

the steel. A list of the various concrete structures to be built in the canal, the amount of steel required for each, and the desired sequence of delivery of the steel was delivered to Robberson. Robberson was advised that Stebbins planned to commence the concrete work for which steel was required on June 18th, and that it would be agreeable for Robberson to make delivery of steel prior to that time. After being so advised, Robberson informed Stebbins by letter dated June 13th that it had scheduled shipment of the steel for the first eight structures in the shipping schedule for the first of the following week. But a disagreement arose between the parties in respect to a transaction in which Robberson furnished to Stebbins steel for the construction of a bridge in Cherokee County, Oklahoma, and Robberson refused to ship any steel for use on the Ozark Canal Job until such controversy had been settled. Stebbins wrote Robberson under date of July 1st. After making reference to the original contract, to the plan to start the concrete work on June 18th, and to the refusal of Robberson to make shipment of steel until the dispute arising out of the furnishing of steel for the bridge job had been settled, the letter read, "It is requested that shipment of steel bars be made in accordance with our contract within ten days from date, otherwise should there be any additional expense, or liquidated damages, due to your failure to perform, we will hold you fully responsible." The first carload of steel was shipped on July 11th; the second on September 6th; the third on September 18th; and the fourth on October 9th. Payment was made for the first carload. Invoices for the second, third, and fourth carloads were not paid. Payment for the second and third carloads not having been made within thirty days of their receipt, Robberson notified Stebbins that it elected to cancel the contract by reason of the breach. Stebbins accepted the cancellation but notified Robberson that it would be held liable for all damages occasioned by the failure to make further deliveries. Stebbins thereafter purchased steel elsewhere to complete the job at a price in excess of that fixed in the contract with Robberson.

This action was brought in the name of the United States for the use and benefit of Robberson against Stebbins and the surety on its bond furnished pursuant to the provisions of the Miller Act, 49 Stat. 793, 40 U.S.C.A. § 270a, to recover for the second, third, and fourth carloads of steel, with accrued interest. Stebbins conceded its liability for the three carloads of steel but sought by counterclaim damages caused by delay in the shipment of the steel, extra expense incurred in bending steel not properly bent by Robberson, and extra expense incurred in purchasing steel elsewhere with which to complete the job after Robberson terminated the contract. The surety on the bond adopted the pleadings of Stebbins. The court awarded Stebbins damages under its counterclaim for loss of the use of equipment due to the delay in delivery of the first carload of steel, for expenses incurred in rebending steel not properly bent by Robberson, and for the increased cost above that fixed in the contract with Robberson for the balance of the steel with which to finish the job. These items in the aggregate were deducted from the amount due for the second, third, and fourth carloads of steel, and judgment was entered for Robberson for the balance. Robberson appealed.

Error is predicated upon the action of the court in allowing Stebbins recovery under its counterclaim for the loss of use of leased or rented equipment which had been assembled and was ready for use at the time specified for delivery of the first carload of steel. It is argued that the letter of July 1st, the shipment of the initial carload of steel within the time stated in the letter, and the acceptance of the shipment constituted a subsequent agreement fixing the time within which the delivery of steel was to commence at a date later than that provided in the original contract, and that the initial shipment was made within the time fixed by the subsequent agreement. Unless the power is restricted by law, the parties to an existing contract may subsequently enter into a valid agreement amending, modifying, or engrafting new provisions upon their former contract. Webb v. Moran, 186 Okl. 140, 96 P.2d 308; Leeder v. Cities Service Oil Co., 199 Okl.

618, 189 P.2d 189. But where the original contract does not contemplate the making of a subsequent agreement, the original consideration will not support the subsequent agreement; and therefore a subsequent agreement not forming a part of the original contract, or supported by the original consideration thereof or by any new consideration, is without binding effect. State ex rel. West v. City of Sapulpa, 58 Okl. 550, 160 P. 489.

◼ The original contract between these parties was still executory at the time of the writing of the letter, and it did not contemplate the making of a subsequent agreement altering, amending, or modifying any of its provisions, or engrafting new provisions upon it. Robberson was then presently obligated by the original contract to deliver the steel, Stebbins was entitled to have it delivered, and shipment of the first carload was overdue. The letter merely requested or demanded that Robberson do that which it was already obligated by the original contract to do, and delivery of the steel in compliance with the request or demand contained in the letter could only place in the hands of Stebbins steel to which it was then presently entitled under the original contract. The writing of the letter and the shipment of the steel in compliance with its request or demand did not cast upon Robberson any new or additional burden not created by the original contract. Neither did shipment of the first carload of steel within the time suggested in the letter give to Stebbins any new benefit or advantage to which it was not entitled under the original contract. No benefit to Stebbins and no detriment to Robberson were brought about by the writing of the letter and the shipment of the first carload of steel within ten days thereafter. And in the absence of benefit or detriment not created by the original contract there was no binding subsequent agreement between the parties fixing the time within which delivery of steel was to commence at a date later than that provided in the original contract. State ex rel. West v. City of Sapulpa, supra; Cueno Press v. Claybourn Corp., 7 Cir., 90 F.2d 233; Pleasant v. Arizona Storage & Dis-

tributing Co., 34 Ariz. 68, 267 P. 794; Perry v. Farmer, 47 Ariz. 185, 54 P.2d 999; Queen City Construction Co. v. City of Seattle, 3 Wash.2d 6, 99 P.2d 407; Levine v. Blumenthal, 117 N.J.L. 23, 186 A. 457; Wallace v. Cook, 190 Ky. 262, 227 S.W. 279; Dobbins v. City Bond & Mortgage Co., 343 Mo. 1001, 124 S.W.2d 1111; Pool v. First National Bank of Princeton, 287 Ky., 684, 155 S.W.2d 4.

◼ The action of the court in allowing Stebbins recovery under its counterclaim for the loss of use of leased or rented equipment intermediate the time the first carload of steel should have been shipped and its actual shipment is challenged on the further ground that the letter dated July 1st, the making of the initial shipment within the time stated in the letter, and the acceptance of the shipment constituted a waiver of the right to damages for failure to make such shipment at the time specified in the original contract. It is the law in Oklahoma that a waiver is the intentional relinquishment of a known right. To be operative, there must be knowledge of the existence of the right and an intention to relinquish it. And it must be founded upon a consideration. Smith v. Minneapolis Threshing Machine Co., 89 Okl. 156, 214 P. 178. It is also the law of that state that the right to damages for the breach of a contract may be waived by the party not in default himself, but in order to constitute an effective waiver of such right he must yield unqualified acquiescence in the breach. Croak v. Trentman, 50 Okl. 659, 150 P. 1088; Seigle v. Hamilton-Carhartt Cotton Mills, 89 Okl. 68, 213 P. 305.

The letter expressed a willingness on the part of Stebbins to accept the first carload of steel at a delayed time. No doubt that was due to the existing circumstances. Stebbins was obligated by its contract with the United States to complete the Ozark Canal job within a certain time or pay liquidated damages for its failure to do so. Reinforcing steel was essential to the completion of the job and it was scarce. Time was running, leased or rented equipment which had been assembled was standing idle part of the time, and men em-

ployed for work were being released and were going elsewhere. While the letter expressed a willingness to accept the first carload at the overdue time, it did not state expressly or by fair implication that if that carload was shipped within ten days from the date of the letter, the right to sue for accrued damages would be waived. It stated that Robberson would be held liable for additional expense and liquidated damages if the initial carload of steel was not shipped within the ten-day period, but it was silent in respect to waiving recovery of accrued damages. The letter not only failed to indicate an intention to waive the right to accrued damages for the breach of the contract which had existed for more than ten days, but it was not founded upon any consideration as Robberson was then under a continuing obligation created by the original contract to make delivery of the first carload of steel and Stebbins was then presently entitled under such contract to have it delivered. An intention to waive the right to accrued damages and consideration were essential elements of an effective waiver. Smith v. Minneapolis Threshing Machine Co., supra. Both elements being absent, the writing of the letter and the shipment of the first carload of steel did not effectuate an operative waiver.

■ Though overdue, the first carload of steel was shipped and it was accepted. There is some contrariety of view among the courts as to whether acceptance of performance of a contract after breach constitutes a waiver of the right of action for damages for the breach. Some courts hold that unless there is an express reservation of the right to sue, acceptance of performance after the time fixed is to be treated as a waiver of damages. But the prevailing rule of wide acceptation with which we find ourselves in accord is that while acceptance of performance after breach may operate as a waiver of the right to treat the contract as terminated by the breach, such acceptance standing alone and without more does not constitute an effective waiver of the right of action for damages caused by the breach. Frankfurt-Barnett Co. v. William Prym Co., 2 Cir., 237 F. 21; Purington Paving Brick Co. v. Metropolitan Paving Co., 8 Cir., 4 F.2d 676; Bagby v. Walker, 78 Md. 239, 27 A. 1033; Medart Patent Pulley Co. v. Dubuque Turbine & Roller Mill Co., 121 Iowa 244, 96 N.W. 770; Buick Motor Co. v. Reid Manufacturing Co., 150 Mich. 118, 113 N.W. 591; Howard v. Thompson Lumber Co., 106 Ky. 566, 50 S.W. 1092; Redlands Orange Growers' Association v. Gorman, 161 Mo. 203, 61 S.W. 820, 54 L.R.A. 718; Steininger Construction Co. v. Bates, 159 Ark. 416, 252 S.W. 618; Builders' Supply & Equipment Corp. v. Gadd, 183 N.C. 447, 111 S.E. 771; Johnson v. North Baltimore Bottle Glass Co., 74 Kan. 762, 88 P. 52, 7 L.R.A.,N.S., 1114, 11 Ann.Cas. 505; Stephens v. Weyl-Zuckerman & Co., 33 Cal.App. 566, 165 P. 975; Nichols & Shepard Co. v. Parker, 133 Kan. 709, 3 P. 2d 462, 80 A.L.R. 319; Allen v. Blyth, 173 Wash. 409, 23 P.2d 567; Sundt v. Tobin Quarries, 50 N.M. 254, 175 P.2d 684, 169 A.L.R. 586.

■ The judgment is attacked on the additional ground that it was error to allow recovery under the counterclaim for the additional cost incurred by Stebbins in obtaining through another channel steel with which to finish the job. It is argued that the failure of Stebbins to make payment of the invoices for the second and third carloads of steel within the time provided in the contract constituted a breach of the contract; that Robberson had the right to terminate the contract on account of the breach; and that having terminated it on that account, Robberson was not liable for the additional expense which Stebbins incurred in the purchase of steel elsewhere for the completion of the job. The failure of Stebbins to pay for the second and third carloads of steel within the time provided in the contract constituted a breach of the contract. And while the rule is not uniform, it may be assumed that generally under the law of Oklahoma where a contract of sale provides for deliveries in installments and payment of the purchase price for each installment within a specified time after delivery, and default is made in the payment of one or more installments in accordance with the con-

tract, the seller may treat the contract as breached and refuse to proceed further under its terms. Clements v. Jackson County Oil & Gas Co., 61 Okl. 247, 161 P. 216, L.R.A.1917C, 473. But long prior to the failure of Stebbins to make payment for the second and third carloads of steel, Robberson wrongfully refused to ship any steel until the controversy between the parties arising out of another contract was settled. That refusal constituted a breach of the contract on the part of Robberson. Stebbins suffered damages due to the breach, and Robberson made no offer of reparation. It is well settled that the right to repudiate a contract for the default of the other party thereto cannot be exercised by a party who is himself in unexcused default of performance of an essential covenant thereof. The right to terminate a contract on the ground of failure of performance by the opposite party belongs only to the party who is free from default himself. White Oak Fuel Co. v. Carter, 8 Cir., 257 F. 54, certiorari denied, 250 U.S. 673, 40 S.Ct. 16, 63 L.Ed. 1200; Fairchild-Gilmore-Wilton Co. v. Southern Refining Co., 158 Cal. 264, 110 P. 951; Central Lumber Co. v. Arkansas Valley Lumber Co., 86 Kan. 131, 119 P. 321; California Sugar & White Pine Agency v. Penoyer, 167 Cal. 274, 139 P. 671; Stilwell v. McDonald, 100 Or. 673, 198 P. 567; Howard County v. Pesha, 103 Neb. 296, 172 N.W. 55; Hafner v. A. J. Stuart Land Co., 246 Mich. 465, 224 N.W. 630; E. L. Husting Co. v. Coca Cola Co., 205 Wis. 356, 237 N.W. 85, 238 N.W. 626, 84 A.L.R. 22; Atlas Brewing Co. v. Huffman, 217 Iowa 1217, 252 N.W. 133; Marietta Publishing Co. v. Times Publishing Co., 26 Ga.App. 752, 107 S.E. 270; Reiser v. Lawrence, 96 W.Va. 82, 123 S.E. 451; Carr v. Stockton, 84 Fla. 69, 92 So. 814; Meyer Milling Co. v. Baker, 328 Mo. 1246, 43 S.W.2d 794; Parkhurst v. Lebanon Publishing Co., 356 Mo. 934, 204 S.W. 2d 241. Since Robberson committed the first breach for which reparation had not been made, it did not have the right to terminate the contract for failure of Stebbins to make payment for the second and third carloads of steel within the time specified by the contract.

The remaining contention which calls for consideration is that the court should not have allowed interest prior to judgment on the amount awarded under the counterclaim for rebending steel improperly bent by Robberson. It is argued that the claim for the cost or expense of rebending the steel was an unliquidated claim on which interest prior to the entry of judgment was not authorized; and that in the event it should be held that interest was properly allowable prior to the entry of judgment, it should have begun to run at a date later than that fixed in the judgment. It is the general rule of law in Oklahoma that interest on an unliquidated account or claim is not recoverable until the amount due is fixed by judgment. Dick v. Essary, Okl.Sup., 203 P.2d 715; Grand River Dam Authority v. Jarvis, 10 Cir., 124 F.2d 914; Saulsbury Oil Co. v. Phillips Petroleum Co., 10 Cir., 142 F.2d 27, certiorari denied, 323 U.S. 727, 65 S.Ct. 62, 89 L.Ed. 584. But compensation is a fundamental principle of damages, whether the action be in contract or tort; and one who fails to perform his contract is justly bound to make good all damages which naturally and reasonably accrue from the breach. And while generally interest is not allowed upon unliquidated damages prior to the entry of judgment, the court may in the exercise of a sound discretion include interest or its equivalent as an element of damages when it is necessary in order to arrive at fair compensation. Miller v. Robertson, 266 U.S. 243, 45 S.Ct. 73, 69 L.Ed. 265; Concordia Insurance Co. v. School District No. 98, 282 U.S. 545, 51 S.Ct. 275, 75 L.Ed. 528. When the case is viewed in its entirety, we are unable to say that the allowance of interest made by the court to begin running at the time fixed in the judgment was not reasonably necessary in order to arrive at fair compensation to Stebbins for the damages which it suffered as the natural result of the failure of Robberson to perform its obligations under the contract.

The judgment is affirmed.